UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD W. BLANKENSHIP, and GARY BRASSFIELD, on behalf of themselves and all others similarly situated, <br><br> Class Action Plaintiffs, <br><br> vs. <br><br> PUSHPIN HOLDINGS, LLC, LEASE FINANCE GROUP LLC, and JAY COHEN, <br><br> Class Action Defendants. | No. 1:14-CV-06636 (ase)(jtg) |

## FIRST AMENDED CLASS ACTION COMPLAINT

Ronald W. Blankenship, and Gary Brassfield, (Class Action Plaintiffs) on their own behalf, and as representatives of all persons similarly situated, complain of defendants Pushpin Holdings LLC (Pushpin), Lease Finance Group LLC (Lease Finance), and Jay Cohen (Cohen) (collectively Class Action Defendants) as follows:

### Introduction

1. This class action is brought by 71 year old Blankenship who operates a shoe repair store in Bessemer, Alabama, and 68 year old Gary Brassfield who runs an auto lube shop in Fort Smith Arkansas. They were sued in small claims court in the Circuit Court of Cook County, Illinois by Pushpin and Lease Finance on "Non Cancellable Leases" which Plaintiffs never signed. *Ex parte* judgments were entered against them. Their signatures were forged on the Leases. The Leases were for credit card swiping equipment. To make matters worse, the suits filed by Pushpin and Lease

1

Finance were in violation of mandatory arbitration clauses in the Leases. Even if there had no been forgery, the suits were filed in clear breach of the Lease agreements.

2. Further, money was taken out of Plaintiffs' bank accounts by Defendants without authorization based on the forged Leases. This action pleads two claims. First, the Leases are not enforceable against Plaintiffs because their signatures were forged. A forged instrument or contract is not enforceable against the person whose signature is forged. Second, in the alternative, even if the signatures had been authentic, Defendants breached mandatory arbitration clauses in the Leases which apply to claims against Plaintiffs. In similar disregard of the mandatory arbitration clauses, Pushpin and Lease Finance have filed hundreds of small claims cases in Cook County, Illinois.[1]

3. Pushpin and Lease Finance ignored the mandatory arbitration clauses here and filed suits against Blankenship and Brassfield. Pushpin got an *ex parte* judgment against Blankenship for $2,497.65 plus costs. Lease Finance obtained an *ex parte* judgment against Brassfield for $2,753.00 plus costs.

4. What happened to Plaintiffs has happened to hundreds of other people. Lease Finance and Pushpin have filed hundreds of small claim collection cases in the Circuit Court of Cook County, Illinois. For instance, in just the first two weeks of July 2014, they filed over 150 small claims cases.

5. Plaintiffs are informed and believe that many of the hundreds of cases filed by Pushpin and Lease Finance are based on forged signatures and initiated in violation of mandatory arbitration

---

[1] The original Class Action Complaint filed in the Circuit Court of Cook County, Illinois on July 28, 2014 included a claim for breach of the Illinois Collection Agency Act (ICAA). In light of the holding in *LVNV Funding, LLC. v. Trice*, 2015 IL 116129 (February 27, 2015) that the failure of a collection company to register as a debt collection agency does not void a final judgment, this claim was withdrawn.

clauses.

6. The scheme operated by Lease Finance is a variation of a scam for which it was severely penalized by the Attorney General of the State of New York. Attorney General Eric T. Schneiderman issued a Press Release on March 7, 2013 entitled, "A.G. Schneiderman Reaches Settlement With Manhattan Equipment Leasing Company Over $11 M Scheme to Steal From Customers' Bank Accounts". (**Exhibit 1**).

7. The Press Release explained that a multi-million dollar settlement had been reached with a group of New York City based business equipment leasing companies that had schemed to drain $11 million from the bank accounts of small business customers. Northern Leasing Systems, Inc. and its affiliates who included Lease Finance provided credit card processing equipment to mom and pop stores. The companies siphoned over $3.6 million in unauthorized fees from the bank accounts of nearly 110,000 customers before the scheme was discovered and stopped. The companies had plans to steal another $7 million.

8. This time around, Lease Finance and Pushpin are engaged in a not very different scheme– taking money out of customer bank accounts on an unauthorized basis, and then obtaining *ex parte* default judgments in violation of mandatory arbitration clauses if the customer takes action to stop the unauthorized withdrawals.

### **The Parties**

9. Class Plaintiff Ronald Blankenship is an individual who operates a shoe repair business doing business as "Grand Shoe Repair" in Bessemer, Alabama.

10. Class Plaintiff Gary Brassfield operates an oil lube shop in Greenwood, Arkansas.

11. Pushpin is a Delaware limited liability company. Its registered agent for service of

process is CT Corporation System, 111 Eighth Avenue, New York, N.Y. 10011. Pushpin is a shell entity with no full-time employees or any place of business. It is not registered with the Illinois Secretary of State to conduct business in Illinois as a foreign company. On information and belief, Pushpin has no business other than debt collection

12. On information and belief, Pushpin pays about one cent on the dollar to purchase time barred debts on which it brings suit. It then files hundreds of small claims cases against out of state defendants knowing that the cases will lead to *ex parte* judgments, even though the suits violate the mandatory arbitration clauses. If Pushpin manages to collect ten cents on the dollar through wrongful collection demands on *ex parte* judgments, it makes one thousand percent on its investment.

13. Lease Finance is an Illinois registered LLC whose only listed member is Jay Cohen. Like Pushpin, Lease Finance files hundreds of bogus collection cases in Cook County, Illinois.

14. Cohen is an individual is a citizen and resident of the State of New York. He resides at 9 Sterling Place, Lawrence, New York 11559. Cohen owns, controls and operates numerous alter ego shell entities which sell equipment leases, buy debts, and collect debts acquired through purchase of leases. The alter ego entities include Pushpin and Lease Finance. Assets are commingled amongst all the shell entities. The main telephone number for these entities is 888-271-4480. It greets callers with a recording "your leasing company" without naming a particular company.

15. On information and belief, Cohen is also the managing member of GCN Holdings, LLC and controls its operations. GCN Holdings allegedly acquires debts which it subsequently assigns to Pushpin. Cohen signs documents as "President" of Pushpin, even though Pushpin is not a corporation and thus would have no President. Since Cohen is the managing member of GCN

Holdings and also holds himself out as the President of Pushpin, he is on both sides of the alleged assignment. On information and belief, GCN Holdings, Lease Finance and Pushpin are all shell entities controlled by Cohen, by and between which, he assigns and transfer claims as he sees fit.

**Facts**

16. Pushpin and Lease Finance have filed hundreds of small claims cases in Cook County, Illinois. Attached hereto as **Exhibit 2** and **Exhibit 3** are lists of such cases filed by them in the First Municipal District.

**Robert Blankenship**

17. Class Plaintiff Ronald Blankenship is a 71 year old individual operating a shoe repair store in Bessemer, Alabama as a sole proprietor using the assumed name of Grand Shoe Repair.

18. He has been in the shoe repair business for forty-five years.

19. Back in 2002, Blankenship's shoe repair store was located at 102 West 3rd Street, Sheffield, Alabama. On a day when Blankenship was not even at the store, a representative of Retriever Payment Systems marketed a credit card swiping machine to Blankenship's assistant and then left a machine at the store a few days later.

20. Without Blankenship's knowledge or authorization, Retriever Payment Systems caused his signature to be forged on a Non-Cancellable Lease dated November 25, 2002 which bears the name of Lease Finance Group on it. Blankenship never signed the Lease and did not even see it until Lease Finance started sending collection letters to him and making collection demands.

21. On the signature line for Lessee is the name Ronald Blankenship and his forged signature. The signature line identifies him as the Lessee. The signature block has no reference to any corporation being the Lessee. Grand Shoe Repair is an assumed name under which he does

business. Pushpin and Lease Finance claim that their collection cases are based on the Personal Guaranties so that the mandatory arbitration clauses in the Lease do not apply. This is incorrect because even if the forged signatures were authentic, the Leases are signed **individually** by Blankenship and Brassfield. The signature block for Blankenship says Blankenship is the Lessee and calls him the owner. "The Grand Shoe Repair" is an assumed name. It is not a corporation. *Thus, even if Defendants could show Blanksnship signature was not forged,* **Blankenship is the Lessee according to the signature block** *and the mandatory arbitration clause applies to him both because of the signature block and the broad language of the arbitration clause which refers to claims or controversies with the Guarantor.*

22. Blankenship's forged signature also appears in the Personal Guaranty section where he is purportedly guaranteeing a Non Cancellable Lease which already had his forged signature.

23. The Lease is not enforceable against Blankenship due to the forged signature. If it was enforceable, any collection effort would have to be made through arbitration not a lawsuit. Paragraph 21 of the Lease contains this clause:

> CHOICE OF LAW; ARBITRATION: Any claim or controversy, including any contract or tort claim, between or among us, you or any Guarantor related to this Lease, **shall** be determined by binding arbitration in accordance with Title 9 of the U.S. Code and the Commercial Arbitration Rules of the American Arbitration Association. (Emphasis supplied.)

24. Blankenship's Lease agreement was signed by Lease Finance Group, a Division of CIT Financial USA, Inc. The "Rep Code" is Retriever Payment Systems.

25. On its website, Retriever Payment Systems, deceptively promises the "finest merchant services support team in the industry". The opposite is true. There have been numerous complaints about Retriever Payment's non-disclosure of fees, misrepresentation of terms, unprofessional

conduct, and deceptive sales tactics. Its website touts rates starting at 1.35% of the amount of payments being processed on credit cards, but it fails to mention that most lessees pay significantly more for their credit card machines. The company had 268 Better Bureau complaints in the last 36 months.

26. The website www.cardpaymentoptions.com explains the link between Retriever Payment Systems and Lease Finance:

> There are multiple complaints online that claim that Retriever Payment Systems signs merchants up for 48-month, non-cancellable leases through Lease Finance Group, a DBA of Northern Leasing Systems. Aside from the poor contract terms, Northern Leasing is notorious for poor service, deceptive advertising, and costly equipment.

Lease Finance Group had **541 complaints** reported against it by the Better Business Bureau including **61 complaints** about advertising and sales, **211 complaints** on billing and collection issues, and **267 complaints** about product and service. Pushpin Holdings had **142 Better Business Bureau complaints reported** against it.

27. Blankenship's machine never worked properly. He turned it in after seven or eight months. Cards did not swipe correctly. He is informed and believes that some transactions may not have been processed at all resulting in monetary damage to him. He made numerous calls complaining that the machine not working. His concerns were never addressed. The machine was never fixed.

28. $39.95 was automatically deducted from his bank account for a period of months although the machine was not working properly. Blankenship was thereby damaged.

29. Further, money from his credit card customers were supposed to be directly deposited into his bank account by the Lessor within 48 hours, but that did not happen.

30. Sometimes money would not be deposited into his account for several days. He was

thereby damaged in not having use of his money.

31. To make matters worse, $500 was wrongfully taken out of his bank account by Lease Finance after he turned over his machine. Blankenship is informed and believes that this charge was fraudulent.

32. Pushpin violated the mandatory arbitration clause by filing suit against Blankenship on October 8, 2013 (Case No. 13-M1-155481). Pushpin obtained an *ex parte* judgment against Blankenship on January 6, 2014 for $2,497.65 plus costs after suing him in violation of the mandatory arbitration clause. A copy of the case pleadings and Blankenship's lease documents are attached as **Exhibit 4**.

33. The *ex parte* judgment against Blankenship was obtained based upon incomplete and inadequate documentation. The Instrument of Assignment dated November 30, 2005 attached to the Complaint is from CIT Financial USA, Inc. to GCN Holding LLC, but it fails to refer to the Blankenship lease. There is no way to determine from the Assignment that it includes the Blankenship lease. Further, the Assignment and Assumption Agreement dated March 1, 2010 by and among GCN Holding LLC, CCN Holding (Canada) ULC which supposedly assigns the lease to Pushpin fails to explain how CCN Holding had any rights to the Blankenship lease. The Assignment and Assumption Agreement does not even mention the Blankenship lease. In short, the documentation of the alleged assignment to Pushpin is woefully inadequate. On information and belief, the same documentation problems exist for all class members.

34. Blankenship has been damaged for all the aforesaid reasons as well as the entry of an *ex parte* judgment against him which will adversely affect his consumer credit report.

**Gary Brassfield**

35. Gary Brassfield operates an auto lube shop in Arkansas . Timothy George, the sales person, left a credit card swiping machine at Blankenship's business, but said nothing about Blankenship signing any Lease. Timothy George was subsequently sent to jail on fraud charges relating to other dealings.

36. As was the case with Class Plaintiff Blankenship, Brassfield's signature was forged on the Non-Cancellable Lease and the accompanying Guarantee. He was never asked to sign any Lease, nor was he told that he was entering into a Lease. Once again, in the signature block, the Lessee is identified as an individual, Gary Brassfield, and he is called the Owner. There is no corporation referenced in the signature block. It was only when Lease Finance started making collection demands did Brassfield learn that his signature had been forged on a Lease. If Defendants were to show no forgery, the mandatory arbitration clause applies due to the signature block identifying Brassfield as the Lessee and the broad language of the arbitration clause

37. The Lease was signed by Retriever Payment Systems and then purportedly sold to Lease Finance, although once again, the assignment documentation attached to the Complaint is incomplete.

38. Brassfield's credit card machine broke down. His efforts to have Lease Finance fix the machine were to no avail.

39 . Brassfield tendered the machine back to Lease Finance, but it never bothered to pick it up.

40. Paragraph 21 of the Lease agreement states:

CHOICE OF LAW; ARBITRATION: Any unsettled claim or controversy, including any contract or tort claim, between or among us, you or any Guarantor related to this

> Lease, **shall** be determined by binding arbitration under the Commercial Arbitration Rules of the American Arbitration Association, or if you choose, the Rules of Arbitration (Binding) of the Better Business Bureau. (Emphasis supplied.)

41. The Lease is not enforceable against Brassfield because Brassfield's signature is forged. Further, Lease Finance violated the mandatory arbitration clause by filing suit against Brassfield on September 25, 2013 (Case No. 13-M1-152732). On January 28, 2014, Lease Finance obtained an *ex parte* judgment against Brassfield for $2,753.00 plus costs after suing him in violation of the mandatory arbitration clause. A copy of the case pleadings, demand letters and his lease documents are attached as **Exhibit 5**.

42. The *ex parte* judgment was obtained based upon incomplete and inadequate documentation. The Bill of Sale dated April 1, 2010 attached to the Complaint is from Retriever Payment Systems to Lease Finance, but it fails to refer to the Brassfield lease.

43. Lease Finance also sent Brassfield various deceptive and misleading collection notices in its attempt to collect on the alleged debt. On March 19, 2014, Lease Finance mailed a "Pre-Judgment Notice" to Brassfield in which it threatened to obtain a judgment against him for $4,476.93. It demands payment of $4,476.93 within ten days. The Notice was deceptive and misleading because Lease Finance had already obtained an *ex parte* judgment against him on January 28, 2014 for $2,753.00. The "Pre-Judgment Notice" wrongfully demands almost $2,000 in excess of the actual judgment and threatens liens on Brassfield's real and personal property, bank accounts, and wage garnishment proceedings.

44. Brassfield has been damaged by having payments taken from his bank account for a defective machine and by having an *ex parte* judgment entered against him which will adversely affect his consumer credit report.

**Common Allegations**

45. The Class Action Defendants regularly seek to enforce Non-Cancellable Leases against customers whose signatures have been forged on the Leases. The persons that are the victims of these practices are typically sole proprietors or persons operating small businesses.

46. These Leases have mandatory arbitration agreements which are routinely violated by Defendants. The Lessee signature lines typically identify the Lessee as an individual so that if there was no forgery, the mandatory arbitration clauses apply. Further, the fact that the Personal Guarantees do not have arbitration clauses is irrelevant. The language of the arbitration clauses includes actions relating to the Guarantees. The Lessees as individuals would have the benefit of the arbitration clauses, if the signatures were not forged.

47. The amounts in controversy are usually less than $5,000. Due to the relatively small amounts involved, it is not economical for the out of state defendants to hire lawyers to contest the small claims suits. Since the defendants are located throughout the country, it is also cost prohibitive for them to travel to Chicago to file *pro se* court appearances in these small claims cases.

48. Further, the Class Action Defendants often serve persons at addresses which are no longer valid.

49. The documents relied upon by the Class Action Defendants are often invalid on their face, even apart from the forged signatures.

50. The Class Defendants willfully and intentionally file dozens, if not hundreds, of suits in violation of mandatory arbitration clauses and on forged documents.

51. The actions of the Class Action Defendants are wrongful.

52. The Class Action Plaintiffs have been damaged due to the wrongful acts.

## Class Allegations

53. The two classes that Class Action Plaintiffs seek to represent consist of (a) all persons who were sued in small claims court in the last ten years in the Circuit Court of Cook County, Illinois by the Class Action Defendants in violation of the mandatory arbitration clauses who sustained damages such as *ex parte* judgments, and (b) all persons who were sued in small claims court in the last three years on Leases where their signature was forged in violation of the Illinois Consumer Fraud Act who sustained damages such as *ex parte* judgments.

54. The class is so numerous that joinder of all class members is impracticable.

55. The Class Action Plaintiffs and the class share common questions of fact and law, including:

   a. Whether the conduct of the Class Action Defendants was a violation of the Illinois Consumer Fraud and Deceptive Practices Act; and,

   b. Whether the Class Action Defendants regularly file suit in violation of mandatory arbitration clauses.

56. The Class Action Plaintiffs will fairly and adequately represent and protect the interests of the class and have engaged counsel experienced in consumer protection and class action litigation to vigorously represent the class.

57. A class action is superior to other methods for the fair and efficient adjudication of this controversy.

# COUNT ONE -
# VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICE ACT

58. Plaintiffs repeat and reallege the foregoing paragraphs.

59. The Illinois Consumer Fraud and Deceptive Practices Act 815 ILCS 505/1 et seq. prohibits:

> ...unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact... in the conduct of trade or commerce...whether any person has in fact been misled, deceived or damaged thereby.

60. Section 505/10a of the Act provides for actions for damages:

> Any person who suffers actual damages as a result of a violation of this Act, committed by any other person may bring an action against such person.

61. As described above, the Class Action Defendants violated the Consumer Fraud Act by filing suits against persons whose signatures were forged on Non Cancellable Leases. This practice is unfair and deceptive. It was committed in the conduct of trade or commerce.

62. Judge Kocoros recently ruled in *Johnson v. Pushpin Holdings et al.*, (2013 -cv- 7468) that non resident persons such as Plaintiffs have standing to pursue these claims. The Act does not limit the person seeking damages to consumers.

63. In the alternative, the Class Action Plaintiffs are consumers as defined and interpreted under the Illinois Consumer Fraud Act. Consumers have been held to include small businesses and individuals doing business as sole proprietors. Plaintiffs here purchased or contracted to purchase merchandise as the term is interpreted under and defined under the Act. Merchandise includes services. In addition, actions for deceptive leasing practices are covered under the Act.

64. Trade or commerce has been affected. Debt collection practices are governed by the Act.

65. As pled above, the Class Action Plaintiffs have sustained damages as the result of Defendants' actions.

66. The actions of Class Action Defendants were undertaken willfully, wantonly and maliciously since Lease Finance was penalized for similar conduct by the Attorney General of the State of New York.

Wherefore, the Class Action Plaintiffs pray for judgment against the Class Action Defendants as follows:

a. Awarding monetary damages in an amount to be determined at trial;

b. Declaratory relief ruling that Defendants are filing time barred cases and cases subject to mandatory arbitration;

c. Granting the class members restitution by disgorgement of all monies wrongfully received;

d. Punitive damages;

e. Allowing class members to rescind their transactions with defendants;

f. Awarding the class their reasonable costs and expenses, including statutory attorney's fees under the Illinois Consumer Fraud Act and similar statutes and expenses; and

g. Granting such further and other relief as the Court deems just.

## COUNT TWO -
## BREACH OF CONTRACT

67. The Class Action Plaintiffs repeat and reallege the foregoing paragraphs. This count is pled in the alternative to the fraud and forgery allegations, if the Court were to find that the Plaintiffs' signatures were not forged on the Leases (or that Plaintiffs have failed to allege forgery and fraud).

68. The actions of Class Defendants in filing small claims collection cases are barred by the applicable mandatory arbitration clauses in the Leases.

Wherefore, the Class Action Plaintiffs pray for judgment against Pushpin and Lease Finance:

a. Awarding monetary damages in an amount to be determined at trial;

b. Declaratory and injunctive relief barring them from filing further cases;

c. Granting the class members restitution by disgorgement of all monies wrongfully received;

d. Allowing class members to rescind their transactions;

e. Awarding the class their reasonable costs and expenses, including attorney's fees; and

f. Granting such further and other relief as the Court deems just.

Class Action Plaintiffs,

By *Howard B. Prossnitz /s/*

Howard B. Prossnitz, Esq.
Law Offices of Howard B. Prossnitz
218 North Jefferson
Suite 300
Chicago, IL 60661
312 382-8201
howard@prossnitzlaw.com
Atty. No. 55211

March 30, 2015

Certificate of Service

I, Howard Prossnitz, an attorney, certify that I served a copy of the foregoing, on all counsel of record, electronically on this 30th day of March, 2015

*Howard B. Prossnitz /s/*

15