Exhibit 4

ORIGINAL

# IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS MUNICIPAL DEPARTMENT 1st DISTRICT

| | | | | |
|---|---|---|---|---|
| PLAINTIFF **PUSHPIN HOLDINGS** <br> V. <br> DEFENDANT **BLANKENSHIP W RON** | RETURN DAY <br> 11/22/13 | 1102 NUMBER <br> 13-M1-155481 | CONTRACT <br> $ 177.00 | 2,147.65 |
| PLAINTIFF'S ATTY. **MADOFF ARI R PC LAW OFFIC** | COMPLAINT FILED, SUMMONS ISSUED, 10/08/13 RETURNABLE TO CLERK OF THE CIRCUIT COURT | | PLAINTIFF FEES | DEFENDANT |

ADDITIONAL NAMES

P-PLAINTIFF
D-DEFENDANT
A-PLAINTIFF'S ATTY.

| DATE | JUDGE | ORDERS ENTERED | DATE | JUDGE | MEMORANDA OF POSTPONEMENTS |
|---|---|---|---|---|---|
| ENTERED <br> JAN 06 2014 <br> DOROTHY BROWN <br> CLERK OF THE CIRCUIT COURT <br> OF COOK COUNTY, IL <br> DEPUTY CLERK | | XPT $2497.65 TE | | | |

CONTINUED ON HALF SHEET NO.     REVERSE SIDE

Civil Division Action Cover Sheet (Rev. 4/08/11) CCM 0520

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
FIRST MUNICIPAL, CIVIL DIVISION

PUSHPIN HOLDINGS LLC

Plaintiff

No. **13M1 155481**

v.

RONALD W BLANKENSHIP,
Defendant

CIVIL ACTION COVER SHEET

A Civil Action Cover Sheet shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box of the appropriate general category which best characterizes your action.

**Civil Case (A)**
☐ 0007 Confession of Judgment
☐ 0008 Replevin
☐ 0017 Detinue
☐ 0031 Foreign Judgment
    Filing Out of State/Out of Country
☐ 0054 Registration of administrative Judgment

**Tort/Personal Injury Case**
Any wrong or damage done to another person, such as physical pain, illness, or any impairment of physical condition resulting from the careless or negligent actions of others. The most common cases involve auto accident injuries.
☐ 0027 Personal Injury Motor Vehicle
☐ 0048 Dram Shop
☐ 0049 Product Liability
☐ 0057 Personal Injury Motor Vehicle Subrogation
☐ 0001 Personal Injury Other
☐ 0004 Tort Intentional
☐ 0062 Property Damage

**Commercial Litigation Case**
(i.e. credit card agreements, any contract between two or more individuals)
☒ 0002 Breach of Contract
☐ 0071 Fraud
☐ 0074 Statutory Fraud

**Civil Case (B)**
☐ 0031 Filing an Illinois Court Judgment
☐ 0100 Petition for Discovery
    A petition to take depositions or subpoena records before a case is filed.

**Civil Housing Case**
(i.e. condominium conversions, conservation, demolition/objection to fast track,
exterior walls/facades, fire protection, heat call (including unincorporated Cook
County), lead paint new developments, public places of amusement, strategic task force inspections, public nuisance)
☐ 0038 Housing
☐ 0088 Ordinance Violation
☐ 0086 Objection to Fast Track
☐ 0044 Criminal Ordinance Violation
☐ 0037 Heat Case

**Pro Se Case Type**
The Pro Se Court section of the Civil Division resolves disputes between parties
where the amount at issue does not exceed $3,000. The party may act as their own attorney. Forms can be completed at the Pro Se desk in Room 602.
☐ 0050 Pro Se (43,000 or less)

**Eviction Case/Civil Forcible/CHA Forcible**
A summary proceeding in which the landlord seeks to restore possession of the premises or payment of rent when the tenant has wrongfully withheld rent or possession of the premises.
☐ 0005 Forcible (possession only)
☐ 0006 Joint Action (possession and rent)
☐ 0018 Distress for Rent

Atty. No 48674
Attorney (or Pro Se Petitioner):

Name: Law Offices of Ari R. Madoff, P.C.
Address: Post Office Box 64777
City/State/Zip: Chicago, IL 60664-0777
Telephone: 312-379-9529

By: _____
Attorney or Pro Se Litigant

LSE. 1024711

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, 1ST MUNICIPAL DISTRICT

PUSHPIN HOLDINGS LLC ) Case Number: 13M1 155481
)
Plaintiff )
)
)
v. )
) Amount Claimed: $2,147.65 plus costs & fees
RONALD W BLANKENSHIP, ) RETURN DATE:
Defendant )
)
NOV 2 2 2013

## VERIFIED COMPLAINT

NOW COMES Plaintiff PUSHPIN HOLDINGS LLC ("PUSHPIN" or "Plaintiff"), by and through its Attorneys LAW OFFICES OF ARI R. MADOFF, P.C., and for its Complaint against Defendant RONALD W BLANKENSHIP, ("Defendant") alleges as follows:

### PARTIES, VENUE AND JURISDICTION

1. Plaintiff is a Delaware limited liability company.

2. Upon information and belief, Defendant is an individual residing in BESSEMER, AL and is party to present action pursuant to a Personal Guaranty executed by Defendant. Jurisdiction and Venue is appropriate as present action arises pursuant to a Personal Guaranty agreement executed by Defendant as Guarantor. The Personal Guaranty contains Defendant's express consent to the jurisdiction and venue of this Court for claims arising under the Personal Guaranty. (See Personal Guaranty of Defendant, Exhibit A, p. 1).

### ALLEGATIONS COMMON TO ALL COUNTS

3. In the course of its business, Plaintiff purchased and acquired the rights, title and interest to executed equipment finance agreements for leasing of commercial electronic point-of-sale equipment ("equipment") to merchants selecting such equipment from a third-party equipment vendor or supplier.

4. Pursuant to the regular course of business described above, Plaintiff, for good and valuable consideration, acquired by assignment all rights, title and interest of the Original Lessor or its assignee to a commercial equipment finance lease agreement ("Agreement") and accompanying Personal Guaranty Agreement between Lessor and THE GRAND SHOE REPAIR ("Lessee"), original Contract No. TRLGU0000020392 assigned No. 1024711, payment

LSE. 1024711

on which was subject to a Personal Guaranty contract executed by defendant. The Agreement and the Personal Guaranty Contract ("Personal Guaranty") with related Assignment(s) are attached hereto as Exhibit A.

5. The Agreement provides that in the event of a default, Plaintiff may require immediate payment of all amounts then due plus the unpaid balance of the remaining monthly payments for the original term of the Agreement.

6. Defendant, by execution of a Personal Guaranty contract, unconditionally guaranteed all of the Lessee's obligations to the plaintiff under the Agreement, including the basic monthly payment to the plaintiff of $39.95 for a period of 48 months, plus plaintiff's attorney's fees and legal costs incurred in enforcing the Agreement.

7. THE GRAND SHOE REPAIR defaulted by failing to make its required monthly payments due under the Agreement on 11/2/2003. Prior to its default, THE GRAND SHOE REPAIR made payments under the Agreement and was properly credited for an amount totaling $479.40.

8. As a result of the above failure to make scheduled payments pursuant to the Agreement, Plaintiff declared immediately due and payable all accrued and unpaid monthly payments in the total amount of $1,438.20, plus attorney's fees, as provided for under the Agreement with interest accruing from date of default.

9. Pursuant to the executed Personal Guaranty, Demand has been made upon Defendant, in their capacity as Personal Guarantor, for the above balance due Plaintiff, but defendant has failed to pay and still continues to refuse to pay said balance due and owing under the Personal Guaranty.

## COUNT ONE: BREACH OF CONTRACT (BREACH OF PERSONAL GUARANTY)

10. Plaintiff realleges and incorporates all allegations set forth above in paragraphs 1-9 as though fully alleged herein.

11. As a result of Lessee's failure to make the payment due on 11/2/2003 and each and every monthly payment due thereafter, as specified in the Agreement, there has been a default under the Agreement and the contract has been breached.

12. By reason of the foregoing, there is presently due and owing from the Lessee to Plaintiff the remaining unpaid balance under the Agreement of $1,438.20, plus an amount of $709.45 accounting for prejudgment interest of 5 percent accruing thereon from 11/2/2003 pursuant to 815 ILCS 205/1 et. seq. for a total amount claimed of $2,147.65.

13. Accordingly, by reason of the Defendant's obligations under the executed Personal Guaranty, presently due and owing to Plaintiff from Defendant, as the signatory of the Personal Guaranty contract, the total sum of $2,147.65.

## COUNT TWO: RECOVERY OF ATTORNEY'S FEES PURSUANT TO AGREEMENT

14. Plaintiff realleges and incorporates all allegations set forth above in paragraphs 1-13 as though fully alleged herein.

15. Defendant unconditionally guaranteed all obligations to the plaintiff under the Agreement, including payment of plaintiff's attorney's fees and legal costs incurred in enforcing the Agreement.

16. By reason of defendant's unconditional guaranty to pay plaintiff's attorney's fees and legal costs incurred in enforcing the Agreement, there is due and owing from the Defendant to Plaintiff attorney's fees in a sum no less than $350.00 plus costs and fees incurred in bringing the present action.

WHEREFORE, plaintiff demands judgment against defendant as follows:

A. For Count One against defendant, the sum of $2,147.65;

B. For reasonable attorney's fees in a sum no less than $350.00;

C. Possession of any equipment subject to the Agreement if any such equipment is remaining in Defendant's possession and;

D. Costs and Fees and;

E. Any such other and further relief as this Court may deem just and proper.

Respectfully submitted,

PUSHPIN HOLDINGS LLC

PLAINTIFF

By: *[signature]*

One of Plaintiff's Attorneys

Law Offices of Ari R. Madoff, P.C. (Firm No. 48674)
Attorneys for Pushpin Holdings LLC
312-379-9529(p)312-980-6819 (f)
Mailing Address:
Post Office Box 64777
Chicago, IL 60664-0777

LSE. 1024711

RE:
PUSHPIN HOLDINGS LLC ) State of NY
) SS
v. )
RONALD W BLANKENSHIP, ) County of New York

## VERIFICATION AND AFFIDAVIT OF CLAIM
### VERIFICATION (735 ILCS 5/1-109)

I, Narda Richardson, declare under penalties as provided by law pursuant to § 1-109 of the IL Code of Civil Procedure:

that I am the Legal Administrator of the Plaintiff herein.;

that I have read the foregoing Verified Complaint and know the contents thereof;

and that to the best of my knowledge all of the statements in the foregoing Verified Complaint are true and correct; except as to matters therein stated to be made upon information and belief (as to which I believe such statements are true).

AFFIDAVIT

Further, I, Narda Richardson, declare under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, being first duly sworn upon oath or affirmation, depose and state as follows:

1. That I am duly authorized agent and Legal Administrator of Plaintiff in the above captioned matter and I am authorized and qualified with full authority to make this affidavit as a representative of the Plaintiff herein. In performing my duties on behalf of Pushpin Holdings LLC, I am familiar with and have access to the books and records of the Plaintiff herein.

2. That the Plaintiff holds all rights, title and interest of the original Lessor and is the owner and current creditor- holder of the Agreement, original Lease #TRLGU0000020392, assigned No. 1024711 and the executed Personal Guaranty subject of this action; having purchased in the ordinary course of business the account in good faith and for good and valuable consideration from the Original holder or its assignee/successor in interest. The Document(s) of Assignment attached as exhibit(s) to the Complaint are true & correct copies that were kept in the ordinary course of business and pertain to the acquisition of the written agreement(s), obligation(s) and guaranty(s) subject to the present action.

3. That Plaintiff maintains, in the regular course of its business, computer records on which entries are made by a person with direct knowledge of the information therein or knowledge based on documents provided by the original holder and/or its assignee to Plaintiff which have been incorporated into Plaintiff's books, records and electronic records.

4. That Defendant has defaulted in his/her payment obligations to the original holder and/or its assigns and the balance due and owing to the Plaintiff as of the date hereof is $2,147.65 which balance is comprised of $1,438.20 plus prejudgment interest of $709.45, having accrued at 5 percent per anum pursuant to statute as of the date hereof. The costs and the reasonable attorneys fees reflected in the attached verified complaint at law are currently due and owing Plaintiff pursuant to the Agreement. The account has been credited for all payments and credits due.

5. The Exhibits attached to the Complaint and/or this Affidavit are true & accurate copies, which were kept in the ordinary course of business and properly reflect Defendants obligations to Plaintiff under the subject Agreement(s) and/or Contracts and Guarantees.

6. If called as a witness I could competently testify to the matters stated in this affidavit.

The above Verification and Affidavit Sworn to before me this 9/11/2013

Narda Richardson
Title: Legal Administrator

LUISA TATBAK
NOTARY PUBLIC, STATE OF NEW YORK   NO. 01TA6208843
QUALIFIED IN KINGS COUNTY   COMMISSION EXPIRES JULY 13, 2017

LSE 1024711

**CIT** — NON-CANCELLABLE LEASE

LEASE FINANCE GROUP, A DIVISION OF CIT FINANCIAL USA, INC.
233 N. Michigan Ave., Suite 1800
Chicago, IL 60601-5519 • (312) 980-5600 • Fax (312) 980-5789

| REP CODE | | OFFICE NO. |
|---|---|---|
| Retriever Payment Systems | | |

**LEGAL NAME OF LESSEE ("LESSEE"):** THE GRAND SHOE REPAIR
☐ CORPORATION ☐ PROPRIETORSHIP ☐ PARTNERSHIP

**VENDOR:** 101-B Lake Park Road

**BILLING ADDRESS:** 102 W. 3RD ST
**ADDRESS:** Lewisville Tx. 75057

**CITY:** SHEFFIELD **STATE:** AL **ZIP:** 35660
**CITY:** (Lewisville) **PHONE NO.:** 972-420-1925

**LESSEE PHONE NO.** — **COUNTY** — **SIC CODE** — **MERCHANT NUMBER**

**EQUIPMENT MANUFACTURER/SOFTWARE LICENSOR:** Hypercom
**MODEL/LICENSE AGREEMENT:** T7P
**SERIAL/REGISTRATION NUMBER:**

**LOCATION OF Equipment/Software Address** (no. & street, city, state, zip) if different from above

The equipment ("Equipment") and the software and related license agreement(s) ("License Agreement(s)") and collectively with the software, the "Software") described above shall be referred to collectively as the "Property".

### SCHEDULE OF PAYMENTS

| TERM IN MONTHS | BASE MONTHLY PAYMENT OF | PAYABLE AT SIGNING OF THE LEASE |
|---|---|---|
| 48 | $ 39.95 PER MONTH | ☐ FIRST AND LAST MONTHLY PAYMENT $ |
| COMMENCEMENT DATE | PLUS TAXES AND OTHER FEES AS DESCRIBED IN THE TERMS AND CONDITIONS BELOW | ☐ FIRST MONTHLY PAYMENT $ |
| | | ☐ OTHER $ |
| | | TOTAL $ |

**TERMS AND CONDITIONS** (See other side for additional Terms and Conditions)

1. NOTWITHSTANDING ANY AMOUNTS WHICH MAY BE PAID BY LESSOR TO VENDOR OR ANY AGENT OF VENDOR, LESSEE UNDERSTANDS AND AGREES THAT NEITHER VENDOR NOR ANY AGENT OF VENDOR IS AN AGENT OF LESSOR OR IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE. REPRESENTATIONS SHALL IN NO WAY AFFECT LESSEE OR LESSOR'S RIGHTS AND OBLIGATIONS AS HEREIN SET FORTH.

2. NON-CANCELLABLE LEASE. THIS LEASE CANNOT BE CANCELLED BY LESSEE DURING THE TERM HEREOF.

3. DISCLOSURE OF INFORMATION. Lessee and Guarantor(s) expressly authorize Lessor or its agents or assigns continuing authority to conduct credit checks, background investigations concerning Lessee and Guarantor(s) and has the right to report late payments and defaults to credit agencies as deemed appropriate by Lessor. Disputes or inaccuracies regarding information sent to credit agencies should be sent to Lease Finance Group at the address on the top of this lease.

4. AUTHORIZATION AGREEMENT FOR AUTOMATIC WITHDRAWAL OF PAYMENTS. I, the undersigned Lessee in the capacity set forth below, hereby authorize CIT Financial USA, Inc.or its designee, successor or assign (hereinafter "Lessor") to automatically withdraw my monthly rental payment and any amounts, including any and all other charges now due or hereinafter imposed, owed in conjunction with the above referenced Non-Cancellable Lease (hereinafter "Lease") by initiating debit entries to my account at the financial institution (hereinafter "Bank") evidenced on the check copy provided, or such other Bank that may be used by me from time to time. As set forth in paragraph... the event of default of my obligations hereunder, I authorize the Lessor to debit my account for the full amount due under the Lease. A rental payment (whether paid by debit or other means) that is not honored by my bank for any reason will be subject to a $10.00 service fee imposed by Lessor, the amount of which may be debited from my account. I authorize my Bank to accept and to charge any debit entries initiated by Lessor to my account. This authorization is to remain in full force and effect until Lessor has received written notice from me of its termination in such time and in such manner as to afford Lessor a reasonable opportunity to act.

**BANK** COMPASS BANK **ROUTING NO.** [redacted] **ACCOUNT NO.** [redacted]

### CERTIFICATE OF ACKNOWLEDGMENT AND ACCEPTANCE OF LEASED PROPERTY

I HAVE READ AND AGREE TO THE TERMS WHICH APPEAR ON BOTH SIDES OF THIS LEASE DOCUMENT. I represent that this Property is being leased for business or professional purposes and agree that under no circumstances shall this Lease be construed as a consumer contract. I acknowledge receipt of a copy of this Lease Agreement with all lease terms filled in; and acknowledge and agree that I shall be deemed to have unconditionally accepted the Property and have leased me under our Lease Agreement, particulars of which are given above. Lessee's signature herein authorizes Lessor to verbally verify by telephone with representative of Lessee on a verification certificate; the date and of such verification; the terms and conditions of the Lease; the type and make of the Property under the Lease; that all necessary installation has been completed and the Property is in good operating order and in all respects satisfactory to Lessee; and that the monthly rental payment will be automatically debited from the Lessee's verified account number and designated account.

**ACCEPTED BY LESSOR:**
LEASE FINANCE GROUP, A Division of
CIT Financial USA, Inc.
Authorized Signature: [signature]
Title: VP   Date: 12/2/0

**ACCEPTED BY LESSEE:**
LESSEE #1
X Signature: [signature]
Print Name: RONALD W. BLANKENSHIP
Title: OWNER   Date: 11/25/02
Witness Signature X: Perry F. K[?]

**LESSEE (FULL LEGAL NAME)**
LESSEE #2 (if applicable)
X Signature: ____
Print Name: ____
Title: ____   Date: ____

### PERSONAL GUARANTY

To induce Lessor to enter into this Lease, the undersigned unconditionally guarantees to Lessor the prompt payment when due of all of Lessee's obligations to Lessor under the Lease. Lessor shall not be required to proceed against Lessee or the Property or enforce any other remedy before proceeding against the undersigned. The undersigned agrees to pay all attorney's fees and other expenses incurred by Lessor by reason of default by the Lessee or the undersigned consents to any extensions or modifications granted to Lessee and the release and/or compromise of any obligation of Lessee or any other obligors and guarantors without in any way releasing the undersigned from its obligations hereunder. This is a continuing Guaranty and shall not be discharged or affected by death of the undersigned, shall bind the heirs, administrators, representatives, successors and assigns, and may be enforced by or for the benefit of any assignee or successor of Lessor. The undersigned agrees and consents the Court of the State of Illinois having jurisdiction in Cook County or any Federal District Court having jurisdiction in said county shall have jurisdiction and shall be the proper venue for the determination of all controversies and disputes arising hereunder. The undersigned agrees and consents that the service of process by registered or certified mail will be sufficient to obtain jurisdiction.

**Guarantor Signature** X [signature]
No title allowed
Date 11/25/02

**Guarantor Signature #2** X ____
(if applicable) No title allowed
Date ____

X Perry F. K[?]
Witness Signature
Date 11/25/02

We have written this Lease in plain language because we want you to fully understand its terms. Please read your copy of this Lease carefully and feel free to ask us any questions you may have about it. We use the words you and your to mean the Lessee indicated above. The words we, us, and our refer to the Lessor indicated above...

REV. 7/00   LFG-S   WHITE - ORIGINAL

5. NO WARRANTIES. The Property is subject to any warranties made by the manufacturer of the Equipment or licensor of the Software ("Licensor") and any limitation thereof. The Property is leased "AS IS" and LESSOR IS NOT LIABLE FOR THE PERFORMANCE OF THE EQUIPMENT, THE SOFTWARE, THE LICENSOR OR ANY OTHER PARTY'S FAILURE TO PROVIDE SERVICE. YOU ACKNOWLEDGE THAT WE DID NOT MANUFACTURE OR LICENSE THE PROPERTY NOR DID WE SELECT IT. WE DID NOT REPRESENT THE MANUFACTURER OR THE LICENSOR AND YOU SELECTED THE PROPERTY BASED UPON YOUR OWN JUDGEMENT. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. YOU AGREE THAT, REGARDLESS OF CAUSE, WE ARE NOT RESPONSIBLE FOR, AND YOU WILL NOT MAKE ANY CLAIM AGAINST US FOR, ANY DAMAGES, WHETHER LOST PROFITS, LOST DATA, CONSEQUENTIAL, DIRECT, SPECIAL, PUNITIVE OR INDIRECT, RELATING TO THE PROPERTY. YOU AGREE THAT IN THE EVENT OF A BREACH OR DEFAULT UNDER THE LICENSE AGREEMENT, LESSEE'S SOLE REMEDY SHALL BE AGAINST THE LICENSOR. We hereby notify you that you may have rights under the supply contracts or the License Agreement, and that you may contact the supplier or the Licensor for a description of those rights or any warranties.

6. TERM AND RENT. The Lease term shall commence as of the date that the Lease is accepted by us, ("the Commencement Date"), and shall continue until your obligations under the Lease shall have been fully performed. Each installment of rent shall be payable monthly in advance, the first such payment being due on the date you sign this Lease, or at such later time as agreed to by us, and the second payment shall be due the following month on the day of the month we designate in writing (hereinafter "Payment Day"), and subsequent payments will be due on the Payment Day of each successive month until the balance of the rent and any additional rent or fees chargeable to you under this Lease have been paid in full. All payments of rent shall be made to us at the address set forth herein or such other address that we may designate in writing. YOUR OBLIGATION TO PAY SUCH RENTALS SHALL BE ABSOLUTE AND UNCONDITIONAL AND IS NOT SUBJECT TO ANY ABATEMENT, SET-OFF, DEFENSE OR COUNTERCLAIM FOR ANY REASON WHATSOEVER, INCLUDING ANY ACTION BY LICENSOR OR ANY OTHER THIRD PARTY. You hereby authorize us to insert the serial numbers and other identification data of the Property when determined by us and dates or other omitted factual matters. If a security deposit is indicated above, the same shall be held by us to secure the faithful performance of the terms of the Lease and returned or applied in accordance with Paragraph 18 hereof.

7. ASSIGNMENT. (a) WE MAY ASSIGN OR TRANSFER THIS LEASE OR OUR INTEREST IN THE PROPERTY WITHOUT NOTICE TO YOU. Any assignee of ours shall have all of the rights, but none of the obligations, of ours under this Lease and you agree that you will not assert against any assignee of ours any defense, counterclaim or offset that you may have against us. (b) YOU SHALL NOT ASSIGN OR IN ANY WAY DISPOSE OF ALL OR ANY PART OF YOUR RIGHTS OR OBLIGATIONS UNDER THIS LEASE OR ENTER INTO ANY SUBLEASE OF ALL OR ANY PART OF THE PROPERTY WITHOUT OUR PRIOR WRITTEN CONSENT.

8. TITLE, QUIET ENJOYMENT. We shall at all times retain title to the Property. All documents of title and evidence of delivery shall be delivered to us. You hereby authorize us, at your expense, to cause this Lease, or any statement or other instrument in respect to this Lease showing our interest in the Property, including Uniform Commercial Code Financing Statements to be filed or recorded and refiled and rerecorded, and grant us the right to execute your name thereto. You agree to execute and deliver any statement or instrument requested by us for such purpose, and agree to pay or reimburse us for any filing, recording or stamp fees or taxes arising from the filing or recording of any such instrument or statement. So long as you are not in default under any of the terms in this Lease, we agree that we shall not interfere with your quiet use and enjoyment of the Property.

9. CARE, USE AND LOCATION. You shall maintain the Equipment in good operating condition, repair and appearance, and protect the same from deterioration other than normal wear and tear, shall use the Property in the regular course of your business; shall not make any modification, alteration or addition to the Property without our written consent, which shall not be unreasonably withheld; shall not so affix the Equipment to realty as to change its nature to real property; and shall not remove the Property from the location shown herein without our written consent, which shall not be unreasonably withheld.

10. NET LEASE: TAXES. You intend the rental payments hereunder to be net to us, and you agree to pay all sales, use, excise, personal property, stamp, documentary and ad valorem taxes, license and registration fees, assessments, fines, penalties and similar charges imposed on the ownership, possession or use of the Property during the term of this Lease; shall pay all taxes (except our Federal or State net income taxes) imposed on you or us with respect to the rental payments hereunder or the ownership of the Property; and, shall reimburse us upon demand for any taxes paid by or advanced by us. Unless otherwise agreed to in writing, you shall file personal property tax returns with respect to the Property.

11. INDEMNITY. You shall and do hereby agree to indemnify and save us, our agents, servants, successors, and assigns harmless from any and all liability, damage or loss, including reasonable attorney's fees, arising out of the ownership, selection, possession, leasing, operation, control, use, condition (including but not limited to latent and other defects, whether or not discoverable by you), maintenance, delivery and return of the Property. The indemnity shall continue in full force and effect notwithstanding the termination of the Lease.

12. INSURANCE. You shall keep the Equipment insured against all risks of loss or damage from any cause whatsoever for not less than the full replacement value thereof. You shall carry public liability insurance, both personal injury and property damage, covering the Equipment. All such insurance shall be in form and with companies satisfactory to us and shall name us and our Assignee as Loss Payee as our interest may appear with respect to property damage coverage and as additional insured with respect to public liability coverage. You shall pay the premiums for such insurance and upon our request deliver to us satisfactory evidence of insurance coverage required hereunder. The proceeds of such insurance payable as a result of loss or damage to any item of Equipment shall be applied to satisfy your obligation as set forth in Paragraph 13 below. You hereby irrevocably appoint us as your attorney-in-fact to make a claim for, receive payment of and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy.

13. RISK OF LOSS. You shall bear all risks of loss and damage to the Property from any cause and the occurrence of such loss or damage shall not relieve you of any obligation hereunder.

14. INSURANCE NON-COMPLIANCE. In the event you fail to comply with your obligations under Paragraph 12 of this agreement to deliver to us evidence of insurance naming us as Loss Payee, or upon the cancellation or non-renewal of the required insurance, then you shall be subject to an Insurance Non-Compliance Charge in the amount of $2.50 per month, per item of Equipment, said amount to be paid with the next monthly rental payment and all subsequent payments due during the remaining term of the Lease, or until such time as satisfactory evidence of insurance coverage has been provided. The imposition of the Insurance Non-Compliance Charge shall not relieve you of any obligation under Paragraph 13 of this ag___

15. EVENT OF DEFAULT. If any one of the following events ___ the extent permitted by applicable law, we shall have the right to exercise ___ set forth in Paragraph 16 below, (a) you fail to pay any rental or any other payment ___ due; or (b) you fail to perform any of the terms, covenants, or conditions of this Lease other than provided above after ten (10) days' written notice.

16. REMEDIES. If a Default occurs, we may do any or all of the following: (a) terminate this Le___ (b) declare all unpaid Lease payments until the end of the term of this Lease and other amounts u___ this Lease immediately due and payable; (c) repossess or render unusable, any Property wher___ located, without demand or notice, without any court order or other process of law and without li___ ity to you for any damages occasioned by such action; (d) require you to deliver the Property to a l___ tion designated by us; (e) proceed by court action to enforce performance by you of this Lease an___ recover all damages and expenses incurred by us by reason of any Default; or (f) exercise any o___ right or remedy available at law or in equity, including those of a secured creditor. You shall pay t___ costs and expenses (including attorney's fees and costs) incurred by us in enforcing any of the te___ of this Lease or any of our rights against you. Upon repossession or surrender of any Property, ___ may lease, sell or otherwise dispose of the Property, and apply the net proceeds thereof to ___ amounts owed to us hereunder, provided, that you shall remain liable to us for any deficiency. ___ agree that it is commercially reasonable for repossessed Property to be sold at public or private s___ (in any state or county selected by us) to dealers or others in lots or pieces (with or without Property being physically present) at used Property prices. Notwithstanding the foregoing, to extent the Software is nontransferable or its transfer restricted, Lessee agrees that the Lessor an___ Licensor of the Software shall have no duty to remarket such Software or otherwise mitigate any d___ ages relating to such Software. All rights and remedies are cumulative and may be enforced con___ rently. Any delay or failure to enforce our rights hereunder does not prevent us from enforcing ___ rights at a later time. Notwithstanding the foregoing, any attorneys' fees, costs, or expenses, or c___ or expenses of repossession and storage, shall be limited to the highest amount chargeable u___ applicable law.

17. CHANGE OF NAME, BILLING ADDRESS, BANK ACCOUNT. You will inform us, within ten___ days, of any change in your name, address, billing address, telephone numbers, location of Prop___ or the bank checking account used by ACH debit. We are authorized to correct any typographi___ spelling errors made on the front of this Lease Agreement regarding your address, telephone n___ bers or the Property leased.

18. END OF LEASE TERM. At the expiration or earlier termination of this Lease Term, you h___ the following options: (1.) You shall disconnect and return the Equipment and/or Software, freight paid, to us in good repair, condition and working order, in a manner and to a location we desig___ and all Lessee's right to use the Software shall terminate. (2.) Lessor extends an option to purch___ the equipment at the end of the term for fair market value, which is estimated to be 10% of the L___ term times monthly Lease payment (excluding taxes) and return the Software in accordance ___ option 1. (3.) You can extend upon all the terms and conditions as stated herein for a period of ___ month from its expiration date without the necessity of the execution of any further instrument or ___ ument. At the end of this additional month, options 1, 2, and 3 are again available to you. Unless ___ notify us in writing 30 days prior to the expiration of the Lease Term, or monthly renewal period, ___ shall have been deemed to have chosen option 3 (Automatic Renewal for one month).

19. LATE PAYMENTS AND COLLECTION COSTS. If you do not make a payment within 10 ___ of its due date, you must pay, in addition to the payment, a late charge of $10.00 for each late ___ ment. Each month the past due payment remains unpaid, an additional late fee of $10.00 wil___ assessed. You will pay our collection costs, and reasonable Attorney's fees. Such collection ___ include, but are not limited to charges for collection letters and collection calls and to charges of ___ lection agencies, courts sheriffs, etc. There will be a processing charge of $10.00 for any retur___ check or for any rejected credit card charge or for any rejected automatic bank account d___ Payments are applied to late fees and to processing charges first and then to Lease obligations.

20. MISCELLANEOUS. In the event you fail to comply with any provision of this Lease, we ___ have the right, but not be obligated, to effect such compliance on your behalf. In such event ___ monies expended by, and all expenses of ours in effecting such compliance, shall be deemed t___ additional rental, and shall be paid by you to us at the time of the next monthly payment of rent ___ notices under this Lease shall be sufficient if given personally or mailed to the party intended a___ respective address set forth herein, or at such other address as said party may provide in writing ___ time to time. We intend and you intend this Lease to be a valid and subsisting legal instrument, ___ agree that any provision of this Lease which may be deemed unenforceable shall be modified to___ extent necessary to render it enforceable and shall in no way invalidate any other provision or p___ sions of this Lease, all of which shall remain in full force and effect. This Lease shall be binding w___ accepted in writing by us and shall be governed by the laws of the State of Illinois, without regar___ the conflict of law, rules or principles thereof. Unless otherwise prohibited by law you agree and ___ sent that the Court of the State of Illinois having jurisdiction in Cook County or any Federal Dis___ Court having jurisdiction in Cook County shall have the jurisdiction and shall be the proper venu___ the determination of all controversies and disputes arising hereunder. You agree and consent ___ service of process by registered or certified mail will be sufficient to obtain jurisdiction. Nothing ___ tained herein is intended to preclude us from commencing any action hereunder in any court ha___ jurisdiction thereof. You waive, insofar as permitted by law, trial by jury in any action between the ___ ties.

21. CHOICE OF LAW; ARBITRATION: Any claim or controversy, including any contract or ___ claim, between or among us, you or any Guarantor related to this Lease, shall be determined by b___ ing arbitration in accordance with Title 9 of the U.S. Code and the Commercial Arbitration Rules o___ American Arbitration Association. All statutes otherwise applicable shall apply. Judgment upon ___ arbitration award may be entered in any court having jurisdiction. In event you or Guarantor Defa___ these provisions regarding arbitration shall not apply to our right ___ repossess the Equipment. This Lease is made in interstate commerce. Any arbitration shall take p___ in Chicago, Illinois.

22. LIMITATION ON ACTION: You shall commence any action based in contract, tort or othen___ arising from, or related to, this Lease, or the subject matter thereof, within one year of the accru___ that cause of action and no such action may be maintained which is not commenced within that ___ od.

23. ENTIRE AGREEMENT; CHANGES. This Lease contains the entire agreement betw___ the parties and may not be altered, amended, modified, terminated or otherwise changed ex___ in writing and signed by one of our executive officers.

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment Agreement, dated March 1, 2010 (this "Agreement") is made and entered into pursuant to the Receivables Purchase Agreement (the "Purchase Agreement") by and among GCN HOLDING LLC, a Delaware limited liability company, and GCN HOLDING (CANADA) ULC, a Canadian unlimited liability company (together referred to as the "Seller"), and PUSHPIN HOLDINGS LLC, a Delaware limited liability company (the "Buyer"). Capitalized terms used herein without definition shall have the meaning specified in the Purchase Agreement.

Seller, for the consideration described in the Purchase Agreement, the receipt of which is hereby acknowledged, and subject to all of the terms and conditions of the Purchase Agreement, does hereby transfer and assign to Buyer, its successors and assignees, all of the Receivables as of the Closing Date.

Terms of the Purchase Agreement, including but not limited to, the representations, warranties, covenants, agreements and indemnities relating to the Receivables are incorporated herein by this reference. The parties hereto acknowledge and agree that the representations, warranties, covenants, agreements and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.

This Agreement shall inure to the benefit of, and be binding upon, the respective successors and permitted assignees of Seller and Buyer and shall be governed by and construed and interpreted in accordance with the Purchase Agreement and the laws of the State of New York, without regard to such State's conflicts of law rules which would require the application of the laws of a different jurisdiction.

This Agreement may be executed by facsimile transmissions in multiple counterparts, each of which shall be an original, but together shall constitute one and the same instrument

[Signature page follows.]

[New York #2177584 v1]

IN WITNESS WHEREOF, Seller and Buyer have caused this Agreement to be executed by their duly authorized representatives the day and year first above written.

GCN HOLDING LLC

By:_____
Name:
Title:

GCN HOLDING (CANADA) ULC

By:_____
Name:
Title:

PUSHPIN HOLDINGS LLC

By: *[signature]*
Name: Jan Cohen
Title: President

---

IN WITNESS WHEREOF, Seller and Buyer have caused this Agreement to be executed by their duly authorized representatives the day and year first above written.

GCN HOLDING LLC

By: *[signature]*
Name: Gunwant Seth
Title: Secretary

GCN HOLDING (CANADA) ULC

By: *[signature]*
Name: Gunwant Seth
Title: Secretary

PUSHPIN HOLDINGS LLC

By:_____
Name:
Title:

# INSTRUMENT OF ASSIGNMENT

Instrument of Assignment dated November 30, 2005 ("Instrument") by CIT Financial USA, Inc., a Delaware corporation ("Seller"), in favor of GCN Holding LLC, a Delaware limited liability company ("Buyer").

Pursuant to the Asset Purchase Agreement dated as of November 9, 2005, as amended as of November 30, 2005 (the "Agreement"), among CIT Group Inc., CIT Financial Ltd., Seller, Buyer, GCN Holding (Canada) ULC and Lease Finance Group LLC, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller does hereby sell, assign, transfer, convey and deliver unto Buyer, its successors and assigns, each and all of the US Purchased Assets (as such term is defined in the Agreement) (other than legal title to the US Purchased Assets identified in Schedule 8.7 of the Agreement), intending hereby to convey all of the right, title and interest of Seller therein (other than such legal title).

Seller hereby covenants and agrees to and with Buyer, its successors and assigns, to do, execute, acknowledge and deliver to, or to cause to be done, executed, acknowledged and delivered to, Buyer, its successors and assigns, all such further acts, deeds, assignments, transfers, conveyances, powers of attorney and assurances that may be reasonably requested by Buyer for the better selling, assigning, transferring, conveying, delivering, assuring and confirming to Buyer, its successors or assigns, any or all of the right, title and interest in the US Purchased Assets being transferred hereby.

This Instrument shall be binding upon the successors and assigns of Seller and shall inure to the benefit of the successors and assigns of Buyer.

IN WITNESS WHEREOF, Seller has caused this Instrument to be duly executed and delivered as of the date first set forth above.

CIT FINANCIAL USA, INC.

By: _____
Darcy J. Leneveu
Executive Vice President