# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RONALD W. BLANKENSHIP<br>and GARY BRASSFIELD,<br>on behalf of themselves and all other similarly<br>situated, | ) <br> ) <br> ) <br> ) <br> ) | |
| Plaintiffs,<br>vs. | ) <br> ) <br> ) | No. 1:14-cv-06636 (ASE) (JTG) |
| PUSHPIN HOLDINGS, L.L.C., LEASE<br>FINANCE GROUP, L.L.C AND JAY COHEN, | ) <br> ) <br> ) | |
| Defendants. | ) <br> ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

Howard B. Prossnitz,
Law Offices of Howard Prossnitz
218 North Jefferson Street
Suite 300
Chicago, IL 60661

Dated: June 3, 2015

# TABLE OF CONTENTS

Introduction ................................................................. 1

Factual Background ....................................................... 3

Argument ................................................................... 6

    I.       Applicable Legal Standard .............................. ............... 6

    II.      The Forgery Allegations Are Sufficient and Defendant's Motions to Dismiss Forgery Claims in Similar Cases Have Been Denied .............................…..…… 7

    III.  Count One Pleads Valid Illinois Consumer Fraud Act (ICFA) Claims ........... 11

        A.   Deceptive and unfair practices alleged ...................................... 11

        B.   Defendants intended that Plaintiffs rely upon the deception ............... 12

        C.   The deception occurred in the course of trade or commerce ............... 12

        D.   Plaintiffs sustained actual damages ........................................... 14

        E.   The damages were proximately caused by the deceptive acts ........... 14

    IV.     Count Two Pleads a Valid Breach of Contract Claim ....................... 14

    V.      It Is Premature to Consider the Viability of the Class Claims ................ 15

    VI.     The Reference to the New York Settlement Is Not Scandalous and Should Not Be Stricken ....................................................................... 15

    VII.   The Claims Against Jay Cohen Should Not Be Dismissed ................ 16

Conclusion ................................................................... 17

## TABLE OF AUTHORITIES

*Angermeir v. Coh*en, 14 F. Supp. 3d 134 (S.D.N.Y. 2014) ....................... 2, 8

*Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746 (N.D. Ill. 2012) ..... 1, 2, 10

*Artists & Framers, Inc. v. Lease Finance Group, L.L.C.*, 2011 U.S. Dist. LEXIS
9862 (D. Md. Feb. 2, 2011) ................................................................... 2, 10

*Asch v. Teller, Levit & Silvertrust, P.C.*, 2003 U.S. Dist. LEXIS 16747
(N.D. Ill. September 23, 2003) ............................................................. 12

*Avila v. Lease Finance Group, L.L.C.*, 2012 U.S. Dist. LEXIS 74860
(Case No. 11-cv-08125 S.D.N.Y. May, 2012) ........................................ 2

*Brown v. C.I. L., Inc.*, 1996 U.S. Dist. LEXIS 4917 at * 67 (N.D. Ill.
January 28, 1996)............................................................................... 12, 13

*Int'l Brotherhood of Elec. Workers, Local 21 v. Illinois Bell Telephone Co.*,
491 F. 3d 685, 687 (7th Cir. 2007) ........................................................14, 15

*Johnson v. Pushpin Holdings, L.L.C.*, 2015 U.S. Dist. LEXIS 36386 (N.D. Ill.
March 23, 2015) ................................................................................ 2, 9

*Just Film, Inc. v. Merchant Services, Inc. et. al.*, 2013 U.S. Dist. LEXIS 186622
(N.D. Cal. Dec. 11, 2013) ................................................................... 2, 15

*People ex rel. Daley v. Datacom Sys. Corp.*, 146 Ill 2d. 1, 585 N.E. 2d 51 ( 1991)... 13

*Pludeman v. Northern Leasing Systems, Inc. et. al.*, 966 N.Y.S. 2d 383
(App. Div., 1st Dept. 2013) ................................................................. 2, 10, 15

*Pope v. Vogel*, 1998 U.S. Dist. LEXIS 2868 (N.D. Ill. March 4, 1998) ............... 11, 12

*Prevue Pet Prods v. Targeted Media for Med., Inc.*, 2003 U.S. Dist. LEXIS 17196
(N.D. Ill. September 26, 2003) ............................................................. 13

*Serin v. Northern Leasing Systems, Inc.*, 2009 U.S. Dist. LEXIS 130899
(S.D.N.Y. Dec. 18, 2009) ....................................................................2, 7, 8, 16

*Simington v. Lease Finance Group, L.L.C.*, 2012 U.S. Dist. LEXIS 25671
(S.D. N. Y. Feb. 28, 2012) ................................................................... 2, 8, 16

*Sloan Valve Co. v. Zurn Industries, Inc.*, 712 F. Supp. 2d 743, 748-49
(N.D. Ill. 2010) ................................................................................. 6

*Spearman Indus. v. St. Paul Fire & Marine Ins. Co.*, 109 F. Supp. 2d 905, 907
(N.D. Ill. 2000) .................................................................... 15

*Sutter Ins. Co. v. Applied Sys.*, 2004 U.S. Dist. LEXIS 4172 at *17
(N.D. Ill. January 28, 2004) (subsequent judgment vacated on other grounds),
393 F. 3d 722 (7th Cir. 2004) ......................................................... 14

Plaintiffs Ronald Blankenship (Blankenship) and Gary Brassfield (Brassfield) submit this Memorandum of Law in Opposition to Defendants' Motion to Dismiss the First Amended Complaint (FAC).

### Introduction

Plaintiffs' First Amended Class Action Complaint pleads two counts against Defendants Pushpin Holdings, L.L.C. (Pushpin), Lease Finance Group (Lease Finance), and Jay Cohen (Cohen). Count One alleges violations of the Illinois Consumer Fraud Act (ICFA). Count Two alleges breach of contract. Count One is validated by Judge Bucklo's opinion in *Armbrister v. Pushpin Holdings, LLC,* 896 F. Supp. 2d 746 (N.D. Ill. 2012). Judge Bucklo wrote that ICFA claims against Pushpin would be viable if actual damages could be pled. Plaintiffs here have pled actual damages. They were damaged by having unauthorized withdrawals made from their bank accounts and by the entry of *ex parte* judgments against them. Thus, *Armbrister* applies. It warrants denial of Defendants' motion to dismiss Count One pled under the Illinois Consumer Fraud Act (ICFA).

The contract claims of Count Two are viable under basic principles of long established contract law. Defendants breached a mandatory arbitration clause which benefited Plaintiffs individually as Lessees and also benefited them as Guarantors.

Further, Jay Cohen should remain in the case. In *Angermeir v. Cohen,* 14 F. Supp. 3d 134 (S.D.N.Y. 2014), the court denied Cohen's motion to be dismissed on RICO claims arising from the same conduct at issue here. His motion to dismiss was also denied in *Serin v. Northern Leasing Systems, Inc.,* 2009 U.S. Dist. LEXIS 130899 (S.D.N.Y. Dec. 18, 2009), and *Simington v. Lease Finance Group, L.L.C.,* 2012 U.S. Dist. LEXIS 25671 (S.D. N. Y. Feb. 28, 2012).

1

Defendants are facing litigation throughout the country for the scam they operate against consumers. The scam involves filing hundreds of bogus small claims suits based on forged documents. Their conduct has spawned at least the following cases, a number of which also included allegations relating to forged leased documents:

- *Serin v. Northern Leasing Systems, Inc.*, 2009 U.S. Dist. LEXIS 130899 (S.D.N.Y. Dec. 18, 2009)(RICO and New York State deceptive practice claims -- motion to dismiss denied on all grounds);

- *Angermeir v. Coh*en, 14 F. Supp. 3d 134 (S.D.N.Y. 2014) (RICO and New York General Business Law claims – motion to dismiss RICO claims denied);

- *Armbrister v. Pushpin Holdings, L.LC.,* 896 F. Supp. 2d 746 (N.D. Ill. 2012) ( Federal Arbitration Act and ICFA claims -- Arbitration Act claims stayed pending arbitration and ICFA claims dismissed without prejudice for failure to plead actual damages)

- *Johnson v. Pushpin Holdings, L.L.C.*, 2015 U.S. Dist. LEXIS 36386 (N.D. Ill. March 23, 2015)(ICFA, Illinois Collection Agency Act, and common law claims – case dismissed and motion for reconsideration pending);

- *Simington v. Lease Finance Group, L.L.C.*, 2012 U.S. Dist. LEXIS 25671 (S.D. N. Y. Feb. 28, 2012)(Consumer fraud, breach of contract and common law claims – motion to dismiss the Connecticut unfair trade practices, breach of contract and common law fraud denied);

- *Pludeman v. Northern Leasing Systems, Inc. et. al.*, 966 N.Y.S. 2d 383 (App. Div., 1st Dept. 2013)(class action proceeded beyond motion to dismiss stage)

- *Artists & Framers, Inc. v. Lease Finance Group, L.L.C.*, 2011 U.S. Dist. LEXIS 9862 (D. Md. Feb. 2, 2011)(intentional misrepresentation, deceit and negligent misrepresentation – motion to dismiss claims denied);

- *Avila v. Lease Finance Group, L.L.C.*, 2012 U.S. Dist. LEXIS 74860 (Case No. 11-cv-08125 S.D.N.Y. May, 2012)(consumer and common law fraud, false advertising, breach of contract and other claims – Lease Finance filed an Answer, Doct. No. 50); and,

- *Just Film, Inc. v. Merchant Services, Inc. et. al.*, 2013 U.S. Dist. LEXIS 186622 (N.D. Cal. Dec. 11, 2013)(RICO and Fair Credit Reporting Act claims – class action settlement approved).

2

Instead of dealing with the ramifications of *Armbrister* and the cases against them where motions to dismiss were denied, Defendants argue that Plaintiffs' claims are not "plausible" and assert that it is "scandalous" to mention that New York Attorney General Eric T. Schneiderman reached a settlement with Defendants and their affiliates to stop their $11 million scheme to steal money from customers' bank accounts. Neither defense is persuasive.

### Factual Background

Simply put, Defendants operate a scam. Unchastened by a 2013 multi-million dollar settlement with the New York Attorney General over a similar scheme and a plethora of civil litigation, Defendants have brazenly continued a variation of their scheme in Chicago, Illinois. (FAC ¶¶ 7, 8.) They have filed hundreds of small claim suits in the Circuit Court of Cook County based on forged lease agreements and in breach of mandatory arbitration clauses. (FAC ¶1.) These collection cases rely upon bogus Verifications and Affidavits of Claims in which a "Legal Administrator" of Defendants falsely swears that the Non-Cancellable Leases on which Defendants sue are "true and accurate copies" of documents that "properly reflect" obligations of Plaintiffs to Defendants. (See e.g., Verification and Affidavit of Claim attached as part of Ex. 4 to FAC). The documents are not true and accurate copies of anything signed by Plaintiffs, nor do they properly reflect legal obligations of Plaintiffs because the signatures are forged. (FAC¶¶ 21, 22, 36.)[1]

Seventy-one year old Ronald Blankenship operates a shoe repair business in Bessemer, Alabama. Sixty-eight year old Gary Brassfield runs an auto lube store in Fort Smith, Arkansas.

---

[1] Defendants argue based on documents outside the scope of the complaint that Lease Finance Group L.L.C. and Lease Finance Group, a division of CIT Financial USA, Inc., are totally separate and independent entities. That is a fact issue not to be resolved on a motion to dismiss, particularly given Plaintiffs' allegations of alter ego

3

(First Amended Complaint "FAC" ¶1.) They allege that they were sued on leases that they never signed and that their signatures were forged on the documents. (FAC ¶1.) Significantly, the complaint alleges that "Blankenship never signed the Lease and did even see it until Lease Finance started sending collection letters to him and making collection demands." (FAC ¶ 20.) For Brassfield, the complaint alleges that "(h)e was never asked to sign any Lease, nor was he told that he was entering into a Lease". (FAC¶ 36.) "It was only when Lease Finance started making collection demands did Brassfield learn that his signature had been forged on a Lease". (FAC ¶ 36.) Thus, the answer to Lease Finance's arguments that the forgery allegations are implausible because Plaintiffs used the machines for months is that Plaintiffs did not know that there were "Non-Cancellable Leases" with forged signatures until collection demands were made.

Monies were wrongfully taken out of their bank accounts by Defendants based on the forged documents. (FAC ¶2.) Plaintiffs allege actual damages. (FAC ¶ 2, 28, 31, 44.) Defendants ignored mandatory arbitration clauses and obtained *ex parte* judgments against Brassfield and Blankenship. (FAC ¶3.)

Cohen is alleged to own, control and operate numerous alter ego shell entities which sell equipment leases, buy debts, and collect debts through the purchase of leases. (FAC ¶ 14.) These entities include Lease Finance and Pushpin. (FAC ¶ 14.) Corporate and legal formalities are not observed by Cohen. For instance, Cohen signs documents as the "President" of Pushpin even though it is a limited liability company and has no President. (FAC ¶ 15.) He is also the managing member of GCN Holdings L.L.C. and controls its operations. (FAC ¶ 15.) GCN

---

shell entities.

4

Holdings L.L.C. assigns claims to Pushpin. (FAC ¶ 15.) Cohen controls both sides of the transaction. (FAC ¶ 15.)

The Blankenship Lease was allegedly signed by Blankenship as Lessee and then again as Guarantor. The signature block on the Lease identifies Blankenship as the Lessee. (FAC ¶21.) Similarly, the Brassfield Lease has a signature block which identifies Brassfield as the Lessee, and the Guaranty is also allegedly signed by him. (FAC ¶ 36.) The Guaranties add nothing to the Leases because the Guarantors are the same person as the Lessees. If the signatures were not forged, the arbitration clauses in the Leases would apply. Defendants erroneously argue that the arbitration clauses do not benefit the individuals.

The complaint further alleges that Defendants are debt collectors who bought these frivolous claims for pennies on the dollar. (FAC ¶ 12.) They hope to extort money from out of state defendants because the amounts at issue are often less than the cost of hiring an attorney to defend the claims. Their deceptive practices have led to hundreds of consumer complaints. Lease Finance had 541 complaints against it reported by the Better Business Bureau. (FAC ¶ 26.) Pushpin had 142 Better Business Bureau complaints. (FAC ¶ 26.)

The Leases contain broad mandatory arbitration clauses. Even if the Leases and Guaranties had not been signed by the same person, the arbitration clauses mandate arbitration on all disputes involving the Guaranties as well as the Leases. The Blankenship arbitration clause states:

> Any claim or controversy, including any contract or tort claim, between or among us, you or any Guarantor related to this Lease, **shall** be determined by binding arbitration in accordance with Title 9 of the U.S. Code and the Commercial Arbitration Rules of American Arbitration Association. ... Judgment upon the arbitration award may be entered in any court having jurisdiction. ... Any

arbitration shall take place in Chicago, Illinois. (Ex. 4 to FAC, Lease ¶21.) (Emphasis supplied.)

The language of the Brassfield arbitration clause is similar:

> Any unsettled claim or controversy, including any contract or tort claim, between or among us, you or any Guarantor related to this Lease, **shall** be determined by binding arbitration in accordance under the Commercial Arbitration Rules of American Arbitration Association, or if you choose, the Rules of Arbitration (Binding) of the Better Business Bureau. ... Judgment upon the arbitration award may be entered in any court having jurisdiction. ... Any arbitration shall take place in Chicago, Illinois. (Ex. 5 to FAC, Lease ¶21.) (Emphasis supplied.)

Thus, contrary to the argument of Defendants, the arbitration clauses apply to the personal guaranties as well as the Leases. The language explicitly refers to the Guarantors


## ARGUMENT

### I. Applicable Legal Standard

This Court summarized the standard of review for a Rule 12(b)(6) motion to dismiss in *Sloan Valve Co. v. Zurn Industries, Inc.,* 712 F. Supp. 2d 743, 748-49 (N.D. Ill. 2010):

> Pursuant to Rule 8(a)(2), a complaint must include 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. R. Civ. P. 8(a)(2). As the Seventh Circuit recently explained, this '[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court.' (Citations omitted.) This short and plain statement must 'give the defendant fair notice of what the claim is and the grounds upon which it rests.' (Citations omitted.) Under the federal notice pleading standards, a plaintiff's 'factual allegations must be enough to raise a right to relief above the speculative level.' (Citation omitted.) Put differently, a 'complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' (Citation omitted.) '[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.'

Plaintiffs Blankenship and Brassfield meet this burden.

## II.  The Forgery Allegations Are Sufficient and Defendants'
## Motions to Dismiss Forgery Claims in Similar Cases Have Been Denied

Plaintiffs allege that "... Defendants regularly seek to enforce Non-Cancellable Leases against customers whose signatures have been forged on the Leases". (FAC ¶45.)  Other courts have denied motions to dismiss similar claims.    Defendants argue for dismissal on the grounds that the forgery allegations are not "plausible", but the fact is that similar forgery claims have been made against them again and again around the country.    The number and similarity of the forgery claims is too significant to dismiss them as "implausible" or one time occurrences. Rather, there is a clear pattern of forged documents being relied upon by Defendants.    Having been put on notice of these repeated forgery claims, it is an unfair and deceptive practice for Defendants to continue to file hundreds of collection cases without determining whether the documents upon which they sue are legitimate.  They cannot turn a blind eye to the forgeries.

In *Serin v. Northern Leasing Systems, Inc.*, 2009 U.S. Dist. LEXIS 130899 (S.D.N.Y. Dec. 18, 2009), Judge Gwin denied a motion to dismiss on all grounds.  The plaintiffs there pled that defendants (who included an affiliate of Lease Finance as well as Cohen ) had "engaged in a racketeering scheme by forging leases bearing the Plaintiffs' names and signatures and then commencing lawsuits against the Plaintiffs in New York City Civil Court, in an effort to extort money from the Plaintiffs, who all live out of state".  2009 U.S. Dist. LEXIS 130899 at *2.  The complaint alleged the same thing that is alleged here – the filing of frivolous small claims against out of state defendants hoping to get money out of them.  There were six plaintiffs in the *Serin* case, all of whom alleged forgeries.    Plaintiff Melinda Serin alleged her signature was forged on a lease for credit card equipment.    Plaintiff Judson Ross alleged forgery.    Plaintiff Gordon

7

Redner alleged forgery. Plaintiff Peri Kettler alleged forgery. Plaintiff Thomas Smith alleged

forgery. Plaintiff Long Soui Lim alleged forgery.

The court in *Serin* held that the requirements of F.R.Civ. Pro. 9(b) to plead mail fraud

with particularity were satisfied. The court also sustained the New York deceptive practices

claim and rejected defendants' arguments that Plaintiffs were not consumers. It found that

plaintiffs had sufficiently alleged that defendants' practices affected the public interest in New

York. The allegations of filing frivolous lawsuits with false averments and based upon forged

documents were held to be sufficient.

In *Simington*, supra, the court also found that the heightened pleading requirements of

Rule 9(b) were satisfied in connection with the common law fraud claim against Lease Finance

Group, L.L.C. The court wrote at pages *29-*30:

> Both the LFG [which defendant group included Cohen] and GLC [Global Leasing
> Company] Defendants contend that the fraud claim fails because plaintiffs fail to
> plead various elements of fraud – and the 'group pleading' in the SAC [Second
> Amended Complaint] fails to meet the heightened standards set forth in under Fed.
> R. Civ. Pro. 9(b). Without going into lengthy detail as to each ground by each set
> of defendants, suffice it to say that the allegations support a fraud claim. The fact
> that plaintiffs have been unable to identify specific acts and representations by each
> specific defendant is of no moment. 'The very nature of the scheme, as alleged,
> gives rise to the reasonable inference' that all defendants (including defendant
> officers who held 'key positions') 'were involved in the fraud.' *Pludeman v. N.
> Leasing Sys.,Inc.*, 10 N.Y. 3d 486, 493, 860 N.Y. S. 2d 422, 890 N.E. 2d 184 (N.Y.
> 2008). To strictly construe Rule 9(b)'s pleading requirements especially where, as
> here, 'concrete facts are peculiarly within the knowledge of the party charged with
> the fraud,' would 'work a potentially unnecessary injustice.' Id. at 491-92
> (quotation marks and citations omitted).

Similarly, in *Angermeir v. Cohen*, 14 F. Supp. 3d 143 (S.D.N.Y. 2014), the plaintiffs

alleged that defendants (who included Lease Finance Group, L.L.C. and Cohen) "used equipment

leases '[b]ased on forged documents, which Defendants knew were forged', to 'intimidate Plaintiffs with dunning letters and phone calls' demanding payment pursuant to the terms of the fraudulent leases." 14. F. Supp. 3d at 140. Plaintiffs there further alleged that when they did not accede to the demands that defendants filed fraudulent lawsuits against them in New York state court which resulted in default judgments. Once again, this conduct is identical to what happened here.

Defendants there argued in similar language to the present motion that the Complaint "failed to provide a **plausible** factual basis" on which to distinguish the wrongful conduct of the defendants. 14 F. Supp. 3d at 143 (emphasis supplied.) Judge Karas denied the motion to dismiss the RICO claim.[2] He noted that "... Plaintiffs allege an overall scheme to defraud individuals based on forged leases and fraudulent litigation which results in default judgments." 14 F. Supp. 3d at 146. The court found that the heightened pleading standards of F.R.Civ.Pro. 9(b) were satisfied.

Further, in *Johnson v. Pushpin Holdings, LLC et al.*, supra, the plaintiffs alleged that defendants used aggressive marketing practices accepting forgeries and unauthorized signatures, and that defendants knew of these practices, but nevertheless filed three thousand small claim collection cases in the Circuit Court of Cook County between March 2010 and November 2014 relying upon false Affidavits. The plaintiffs alleged that the false Affidavits were prepared on an assembly-line basis with knowledge of the defendants that the Affiants did not know the truth of the statements they were swearing to be true. (Second Amd. Complt., Doct. No. 73, Case No.

---

[2] *Angermeir*, unlike *Serin*, did not sustain the N.Y. deceptive practices claims.

9

13-cv-7468.)   Thus, while defendants have been put on notice that they are seeking to enforce forged leases, they continue to file hundreds of small claims cases with false verifications. [3]

Judge Bucklo's opinion in *Armbrister*, supra, also supports denial of the motion to dismiss.  *Armbrister* was a putative class action involving defendant Pushpin.  The allegations are similar to the claims here.  Judge Bucklo dismissed the consumer fraud claim without prejudice because the *Armbrister* plaintiffs had not pled actual damages.  The opinion clearly suggests that if actual damages were pled, plaintiffs would have a valid cause of action.

Unlike the *Armbrister* plaintiffs, the Blankenship and Brassfield have alleged actual damages including the default judgments that were entered against them.  That was not the case in *Armbrister* where Pushpin had not filed suit against two of the four plaintiffs.  It had filed suit against the other two plaintiffs, but nothing had happened in the cases.  896 F. Supp. 2d at 750. Here, in contrast, default judgments were wrongfully obtained against Blankenship and Brassfield after monies were taken from their accounts.

The complaint here is replete with allegations of actual damages besides the *ex parte* judgments.  Plaintiffs plead that they have been damaged by the entries of default judgments which will adversely affect their credit records.  (FAC ¶¶ 34, 44.)  Plaintiff Blankenship had $39.95 deducted every month from his bank account for a credit card processing machine that did not work and that was leased to him through fraudulent tactics.  (FAC ¶ 28).  Blankenship alleges that he was damaged because his credit card machine never worked properly, that some

---

[3] Lease Finance is regularly charged with other fraudulent and deceptive practices. In *Pludeman v. Northern Leasing Systems, Inc.*, 10 N.Y. 3d 486 (Ct. App. N.Y. 2008), plaintiffs alleged that affiliates of the defendants herein defrauded small business owners by having them sign what appeared to be a one page Lease on a clipboard where three additional pages were concealed. The appellate court affirmed denial of a motion to dismiss. In *Artists & Framers, Inc. v. Lease Finance Group*, 2011 U.S. Dist. LEXIS 9862 (D. Md. Feb. 2, 2011), Lease Finance was charged with intentionally concealing certain pages of the Lease being signed.  A motion to dismiss was denied.

transactions may not have been processed at all, that he did not get money deposited into his account on a timely basis as promised, and that $500 was wrongfully taken out of his bank account by Lease Finance after he returned his defective machine. (FAC ¶ 31.)

Similarly, plaintiff Brassfield sustained actual damage by having money taken from his bank account for a defective machine that was leased to him based on fraudulent misrepresentations, and by having the *ex parte* judgment adversely affect his consumer credit report. (FAC ¶ 44.) Plaintiffs have sustained actual damages and have a valid consumer fraud claim under the reasoning of *Armbrister*. While the consumer fraud analysis can stop here, Plaintiffs nevertheless explain below how they satisfy all elements of an ICFA claim. They also address Defendants' laundry list of defenses, none of which have merit.

### III. Count One Pleads Valid Illinois Consumer Fraud Act (ICFA) Claims

Plaintiffs pled valid ICFA claims. The five elements that must be shown for a consumer fraud claim are (1) that a deceptive act or unfair practice occurred, (2) that the defendant intended for the plaintiff to rely upon the deception, (3) that the deception occurred in the course of conduct involving trade or commerce, (4) that plaintiff sustained actual damages, and (5) that such damages were proximately caused by defendant's deception. *Armbrister* at 754. All elements are sufficiently pled here.

#### A. Deceptive act and unfair practices are alleged.

Plaintiffs allege both deceptive acts and unfair practices. (FAC ¶62.) Courts in this district have consistently held that misrepresentations by debt collectors in efforts to collect on debts are deceptive acts within the scope of the Illinois Consumer Fraud Act. *Pope v. Vogel,*

11

1998 U.S. Dist. LEXIS 2868 (N.D. Ill. March 4, 1998) at *17, *Asch v. Teller, Levit & Silvertrust, P.C.*, 2003 U.S. Dist. LEXIS 16747 (N.D. Ill. September 23, 2003) at * 17. Here, Plaintiffs allege that filing suits by Defendants based on forged signatures is deceptive and unfair. (FAC ¶ 61.) Defendants directly committed the wrongful acts.

### B. Defendants intended that Plaintiffs rely upon the deception.

As explained in *Asch*, supra at * 17, Plaintiffs need only show that the defendant intended that there be reliance on the misrepresentation, not that defendant intended to deceive. In *Asch*, the defendant debt collector intended that the debtors rely on misleading debt collection statements and make payments on demands of incorrect amounts. Plaintiffs here allege that they did not actually owe any money to Defendants, but that nevertheless, Defendants filed suits and made deceptive collection demands intending that Plaintiffs pay amounts which were not owed to Defendants. For instance, the March 19, 2014 "pre-judgment notice" sent to Brassfield was an effort to wrongfully collect money from him. The pre-judgment notice demanded that $4,476.93 be paid within ten days, even though a judgment had already been obtained for a much lesser amount, $2,753. (FAC ¶ 43.) The intent was that Brassfield pay $4,476.93 to Lease Finance Group.

### C. The deception occurred in the course of trade or commerce.

Plaintiffs' claims involve trade and commerce and the claims relate to consumers. Courts have rejected the narrow interpretation of these terms advanced by Defendants. In *Brown v. C.I. L., Inc.*, 1996 U.S. Dist. LEXIS 4917 at * 67 (N.D. Ill. January 28, 1996), the court denied a motion to dismiss a consumer fraud claim against a debt collector. It specifically found that debt collection activities were within the ambit of trade and commerce. It wrote:

12

Given that the Consumer Fraud Act should be liberally construed to effect its purposes, [citation omitted], this court finds that the debt collection activities in this case fall under the definition of trade and commerce. CIL is in the business of lending money to Illinois consumers. Whether this business is characterized as a commodity or service, consumers agree to pay interest in exchange for an immediate lump sum of cash. The collection activities are a necessary adjunct to this service; in some sense, debt collection may be seen as the 'distribution' of the loan services purchased in the original transaction. Alternatively, the loan services may be viewed as 'purchased' with incremental interest payments over the term of the loan. Either way, this court concludes that the act of attempting to collect on a loan is sufficiently connected to trade and commerce affecting Illinois citizens to place it within the ambit of the CFA.
1996 U.S. Dist. LEXIS 4917 at *67-*68.

The interpretation of "consumer" urged by Defendants has been rejected. They contend that since the Plaintiffs were business people that Plaintiffs lack standing to assert consumer fraud claims. This argument fails for a number of reasons. First, the statute is titled as "(a)n Act to protect consumers and borrowers and businessmen against fraud, unfair methods of competition and unfair or deceptive acts." 815 ILCS 505/1 et seq. Thus, by definition, the Act protects businessmen as well as consumers. Further, the Illinois Supreme Court in *People ex rel. Daley v. Datacom Sys. Corp.*, 146 Ill 2d. 1, 585 N.E. 2d 51 ( 1991), held that parking ticket violators could not be excluded from the Act's protection on the contention that they were not consumers and lacked standing. The Court said that "(o)nce we find that the Consumer Fraud Act covers debt collection practices, we cannot then arbitrarily decide that only certain debts come within the scope of the Act." 585 N.E. 2d at 64. Similarly, in *Prevue Pet Prods v. Targeted Media for Med., Inc.*, 2003 U.S. Dist. LEXIS 17196 (N.D. Ill. September 26, 2003), a motion to dismiss a consumer fraud claim was denied even though all parties were corporations and not "consumers". The court said that the plaintiff need not be a consumer so long as the claim involved trade or commerce and implicated consumer protection concerns. The court in

13

*Sutter Ins. Co. v. Applied Sys.*, 2004 U.S. Dist. LEXIS 4172 at *17 (N.D. Ill. January 28, 2004) (subsequent judgment vacated on other grounds), 393 F. 3d 722 (7th Cir. 2004), went even further and ruled that a business entity need not show a consumer nexus and need only establish an injury due to defendant's deceptive acts. Either way, Plaintiffs here have standing to pursue their claims.

### D. Plaintiffs sustained actual damages.

As argued above, Plaintiffs allege actual damages through having money taken from them, not to mention the adverse effect on their credit reports of *ex parte* judgments.

### E. The damages were proximately caused by the deceptive acts.

Plaintiffs allege damages resulting from the deception. (FAC ¶¶ 67, 53, 44, 46, 34, 37.) The *ex parte* judgments and wrongful deductions of money were obtained based on the deceptive and unfair acts of Defendants including filing suits using forged and inadequate documentation, improperly notarized court documents, and deceptive statements of amounts owed.

For all these reasons, Plaintiffs have pled a valid ICFA claim.

### IV. <u>Count Two Pleads a Valid Breach of Contract Claim</u>

As noted above, the language of the arbitration clauses in the Leases encompasses any claim or controversy involving any Guarantor. Plaintiffs signed the Leases individually and signed the Guaranties individually, thus rendering the Guaranties superfluous and meaningless. For both reasons, the mandatory arbitration clauses apply. Arbitration clauses should be liberally construed. When deciding arbitrability disputes, "a court must bear in mind the liberal federal policy in favor of arbitration agreements". *Int'l Brotherhood of Elec. Workers, Local 21 v.*

*Illinois Bell Telephone Co.*, 491 F. 3d 685, 687 (7th Cir. 2007). By failing to honor the arbitration clauses, Defendants breached the contracts.

In filing the instant case, Plaintiffs demanded that Defendants comply with the arbitration clauses. The relief sought by Plaintiffs includes a declaration that the disputes are subject to mandatory arbitration. (FAC Count I, at p. 14.)

### V. It Is Premature To Consider The Viability of the Class Claims

No motion for class certification has been filed. As noted above, other class cases against Lease Finance or its affiliates have proceeded. A class was certified in *Pludeman*, supra, and a class settlement was approved in *Just Film, Inc*, supra. There need not be an inquiry here into the individual circumstances of each forgery. Instead, the focus will be on whether the Defendants undertook reasonable steps to investigate the authenticity of lease documents after being put on notice of multiple forgery claims. In *Pludeman*, where a class was certified, the issue was whether a reasonable person would have considered the first page of a lease to be the entire lease. There was no need for individual hearings on what pages each class members saw or read. In any event, all of these issues should be resolved when the motion for class certification is filed, not now.

### VI. The Reference to the New York Settlement Is Not Scandalous and Should Not Be Stricken

"Generally, motions to strike [under Rule 12(f)] are disfavored and usually denied". *Spearman Indus. v. St. Paul Fire & Marine Ins. Co.*, 109 F. Supp. 2d 905, 907 (N.D. Ill. 2000). Here, there is no reason to strike the reference in the complaint to the March 7, 213 New York Attorney General settlement or the press release attached as Exhibit 1 to the complaint. Plaintiffs

contend that punitive damages are appropriate because the alleged wrongful conduct of Defendants is part of a policy and practice of unlawfully taking money from small businesses under the guise of collecting monies supposedly due under business equipment leases. The New York settlement is relevant to the claim for punitive damages. At this stage of the proceedings, it is too early to determine that the New York investigation and settlement bear no possible relation to the instant dispute. The motion to strike should be denied.

### VII. The Claims Against Jay Cohen Should Not Be Dismissed

It is also premature to conclude that no possible claims can proceed against Jay Cohen. Cohen's motion to dismiss was denied in *Serin*, supra. His motion to dismiss Connecticut unfair trade practice, breach of contract and fraud claims was also denied in *Simington*, supra.

Here, the complaint alleges that Cohen owns, operates and controls numerous shell entities which perpetrate the underlying scheme. (FAC ¶¶ 19, 20.) These entities include Pushpin and Lease Finance. Cohen is also the managing member of GCN Holdings, LLC. GCN acquires debts which it assigns to Pushpin. Cohen signs documents as President of Pushpin even though it is not a corporation and has no President. (Assignment and Assumption Agreement included in Ex. 4 to Complaint.) An LLC has no President.

As noted in the New York Attorney General Press Release of March 7, 2013 (Ex. 1 to FAC), Lease Finance's prior scheme was facilitated by "a shell company, SKS Associates LLC, to mislead customers..." Plaintiffs are informed and believes that Pushpin and Lease Finance are shell companies controlled by Cohen. Plaintiffs should be allowed to proceed with discovery on these claims.

16

**Conclusion**

For the aforesaid reasons, Defendants' Motion to Dismiss should be denied.


Plaintiffs,


By: _Howard B. Prossnitz /s/_

Howard B. Prossnitz,
Law Offices of Howard Prossnitz
218 North Jefferson Street
Suite 300
Chicago, IL 60661


Dated: June 3, 2015

17

Certificate of Service

I, Howard Prossnitz, an attorney, certify that I served a copy of the foregoing, on all counsel of record, electronically on this 3rd day of June, 2015.

*Howard B. Prossnitz /s/*