**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| RONALD W. BLANKENSHIP, | ) | |
| and GARY BRASSFIELD, | ) | |
| on behalf of themselves | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 14 C 6636 |
| | ) | |
| PUSHPIN HOLDINGS, LLC, | ) | |
| LEASE FINANCE GROUP LLC, and | ) | |
| JAY COHEN, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendants Pushpin Holdings, LLC's ("Pushpin's"), Lease Finance Group LLC's ("Lease Finance's"), and Jay Cohen's ("Cohen's") (collectively, "Defendants'") Motion to Dismiss Plaintiffs' First Amended Class Action Complaint or in the Alternative, to Strike Scandalous and Class Allegations Therefrom.  (R.53.)

On July 28, 2014, Plaintiffs Ronald W. Blankenship ("Blankenship") and Gary Brassfield ("Brassfield"), filed this action, individually and on behalf of a putative class of similarly situated plaintiffs, in the Circuit Court of Cook County, Illinois, against Defendants.  (*See* R.1, Notice of Removal, ¶ 1.)  Plaintiffs allege that Defendants filed suits against them and obtained *ex parte* judgments—against Blankenship for $2,497.65 plus costs and against Brassfield for $2,753.00 plus costs.  (R.45, Am. Compl., ¶¶ 3, 32, 41.)  According to the Cook County Small Claims Court complaint, Pushpin originally acquired the claims against Plaintiffs based on "a

commercial equipment finance lease agreement and accompanying Personal Guaranty Agreement" between Plaintiff Blankenship and Pushpin and between Plaintiff Brassfield and Lease Finance Group. (R.45-4, at 12, *Pushpin Holdings LLC v. Blankenship*, Case No 13-M1-155481, Circuit Court of Cook County, Illinois, Verified Complt., ¶ 4, attached as Ex. 4 to Am. Compl; R.45-5, at 4, *Lease Finance Grp. v. Brassfield*, Case No. 13-M1-152732, Circuit Court of Cook County, Illinois, Verified Complt., ¶ 5, attached as Ex. 5 to Am. Compl.) Defendants removed the case pursuant to 28 U.S.C. §§ 1446 and 1453, premising federal jurisdiction on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Plaintiffs have since filed their First Amended Class Action Complaint ("Amended Complaint") alleging a claim for violation of the Illinois Consumer Fraud and Deceptive Practice Act ("ICFA"), 815 ILCS 505/1 *et seq.* (R.45, ¶¶ 58-66 (Count I)) and a breach of contract claim (*id.*, ¶¶ 67-68 (Count II)). Defendants' motion seeks dismissal of both counts. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

Viewing the allegations in the light most favorable to Plaintiffs, Plaintiffs allege the following:

### I.    The Parties

Plaintiff Blankenship operates a shoe repair business doing business as "Grand Shoe Repair" in Bessemer, Alabama. (*See* R.45, ¶ 9.) Plaintiff Brassfield operates an oil lube shop in Greenwood, Arkansas. (*See id.*, ¶ 10.) Defendant Pushpin is a limited liability company with three (3) members—themselves limited liability companies with individuals as sole members. (*See* R.1, ¶¶ 4-7; R.45, ¶ 11; R.54, Baranello Decl., ¶ 3; R.54-2, Ex. B., at 2 (Pushpin Holdings LLC Details from Delaware Department of State website).) Defendant Lease Finance Group is a

limited liability company with a single listed member—Defendant Cohen.[1]  (R.45, ¶ 13; *see also* R.54, Baranello Decl., ¶ 2; R.54-2, at 3 (Lease Finance Group LLC Details from Delaware Department of State website).)  Defendant Cohen is a citizen of New York who, according to Plaintiffs, owns and operates numerous shell entities that sell equipment leases, buy debts, and collect debts acquired through purchase of leases.  (R.1, ¶ 9; R.45, ¶ 14.)  Defendant Cohen's alleged shell entities include Defendants Pushpin and Lease Finance.  (R.45, ¶ 14.)  Plaintiffs further allege that Defendant Cohen is also the managing member of and controls the operations for GCN Holdings, LLC—a corporation that acquires debts and subsequently assigns them to Defendant Pushpin.  (*Id.*, ¶ 15.)  As "President" of Pushpin and managing member of GCN Holdings, LLC, Defendant Cohen is on both sides of the alleged assignment.  (*Id.*)  Plaintiffs allege that Defendant Cohen controls each of Defendants Pushpin and Lease Finance, as well as GCN Holdings, LLC and assigns and transfers claims by and between them "as he sees fit."  (*Id.*)

## II.    Plaintiff Blankenship - Lease Agreement & Assignment

Blankenship is a 71-year old sole proprietor operating a shoe repair store in Bessemer, Alabama under the name "Grand Shoe Repair."  (R.45, ¶ 17.)  Blankenship has been in the shoe repair business for 45 years.  (*Id.*, ¶ 18.)  In 2002—when Blankenship's shoe repair store was located at 102 W. 3rd Street in Sheffield, Alabama—a representative of Retriever Payment Systems marketed a credit card swiping machine to Blankenship's assistant and then left a machine at the store a few days later.  (*Id.*, ¶ 19.)  Blankenship was not present at his store on the day Retriever Payment Systems marketed the machine to his assistant.  (*Id.*)  Blankenship's

---

[1] In their Notice of Removal, Defendants assert that Lease Finance is a limited liability company whose sole member is another limited liability company, LF Platform, LLC.  (*See* R.1, ¶ 8.)  Although contradictory to Plaintiffs' allegations, for the purposes of the present motion and the Court's requirement to take facts in the light most favorable to Plaintiffs, the Court relies on the allegations in Plaintiffs' Amended Complaint.

machine never worked properly—credit cards did not swipe correctly and it may not have processed some transactions. (*Id.*, ¶ 27.) In addition, the lessor did not directly deposit payments from credit card customers into Blankenship's bank account within 48 hours. (*Id.*, ¶¶ 29, 30.) Blankenship's numerous calls complaining that the machine did not work were never addressed and the machine was never fixed. (*Id.*) Although the machine did not work properly, a monthly base payment of $39.95 was deducted from Blankenship's bank account for a period of months. (*Id.*, ¶ 28.) After seven or eight months, he turned in the machine. (*Id.* ¶ 27.) Lease Finance took a deduction of $500 out of his bank account after Blankenship turned in the machine. (*Id.*, ¶ 31.)

A Non-Cancellable Lease, dated November 25, 2002, bears a signature for "Ronald Blankenship" as Lessee and "Lease Finance Group, a Division of CIT Financial USA, Inc." as Lessor. (R.45, ¶ 20; *id.*, ¶ 32 (citing R.45-4, Non-Cancellable Lease, attached to the Am. Compl. as Ex. 4, at 8 ("Blankenship Lease")).) Blankenship alleges his signature on the Blankenship Lease is forged. (R.45, ¶¶ 20-24.) The Blankenship Lease lists "Retriever Payment Systems" as the "Rep Code" and indicates the equipment as a "Hypercom", Model/License Agreement "T7P". (R.45-4, at 8; R.45, ¶ 24.) The schedule of payments is listed as $39.95 per month for a term of 48 months, and there is a provision authorizing automatic withdrawal of payments from an account at Compass Bank. (R.45-4, at 8.) The Blankenship Lease contains various provisions, including a Personal Guaranty "[t]o induce Lessor to enter into this Lease" which also bears a signature for "Ronald Blankenship" as Guarantor and states that "the undersigned unconditionally guarantees to Lessor the prompt payment when due of all of Lessee's obligations to Lessor under [] Lease …" (*Id.*) Relevant to the dispute here, the Blankenship Lease also has a "Choice of Law; Arbitration" provision which states:

CHOICE OF LAW; ARBITRATION: Any claim or controversy, including any contract or tort claim, between or among us, you or any Guarantor related to this Lease, shall be determined by binding arbitration in accordance with Title 9 of the U.S. Code and the Commercial Arbitration rules of the American Arbitration Association.

(R.45, ¶ 23; R45-4, at 9.)

Defendant Pushpin filed a claim against Plaintiff Blankenship in Cook County Small Claims Court on October 8, 2013 and obtained an *ex parte* judgment for $2,497.65 plus costs on January 6, 2014. (R.45, ¶ 32; R.45-4, at 2; *id.*, at 4-12, *Pushpin Holdings LLC v. Blankenship*, Case No 13-M1-155481, Circuit Court of Cook County, Illinois, Verified Complt., ¶ 4.) Along with the Blankenship Lease, Defendant Pushpin attached two additional agreements to its complaint in the Small Claims Court related to assignment. First, Pushpin attached an "Instrument of Assignment", dated November 30, 2005, that lists CIT Financial USA, Inc., a Delaware Corporation as "Seller" and GCN Holding LLC, a Delaware limited liability company as "Buyer" and indicates "Seller does hereby sell, assign, transfer, convey and deliver unto Buyer, its successors and assigns each and all of the US Purchased Assets (as such term is defined in the Agreement) …". (R.45-4, at 12 ("Instrument of Assignment").) The Instrument of Assignment does not contain an explicit reference to the Blankenship Lease. (*Id.*) Second, Pushpin attached an "Assignment and Assumption Agreement", dated March 1, 2010, that lists GCN HOLDING LLC, a Delaware limited liability company, and GCN HOLDING (CANADA) ULC, a Canadian unlimited liability company" as "Seller" and "PUSHPIN HOLDINGS LLC, a Delaware limited liability company" as "Buyer" and indicates "Seller … does hereby transfer and assign to Buyer, its successors and assignees, all of the Receivables as of the Closing Date". (R.45-4, at 10-11 ("Assignment and Assumption Agreement").) Defendant Cohen, as President of Pushpin Holdings, LLC, signed the Assignment and Assumption Agreement. (*Id.*) The

Assignment and Assumption Agreement does not contain an explicit reference to the Blankenship Lease.  (*Id.*)

### III.    Plaintiff Brassfield - Lease Agreement & Bill of Sale

Plaintiff Brassfield operates an auto lube shop in Arkansas.  (R.45, ¶¶ 1, 35.)  Brassfield also received a credit card swiping machine from Lease Finance that broke down and after unsuccessful efforts to have Lease Finance fix the machine, he tendered the machine to Lease Finance—which never came to retrieve it.  (*Id.*, ¶¶ 35, 38, 39.)[2]  Lease Finance took payments for the defective machine from Brassfield's bank account.  (*Id.*, ¶ 44.)

A Non-Cancellable Lease, dated March 15, 2010, bears a purported signature for "Gary Brassfield" as Lessee and "RPSI, Inc. d/b/a Retriever Payment Systems" as Lessor.  (R.45-5, Non-Cancellable Lease, attached to the Am. Compl. as Ex. 5, at 8 ("Brassfield Lease")).)  Like Blankenship, Brassfield alleges that his signature on the Brassfield Lease is forged.  (R.45, ¶¶ 36, 41.)  The Brassfield Lease indicates the equipment manufacturer as "Omni 3730". (R.45-5, at 8.)  The schedule of payments is listed as $89.00 per month for a term of 48 months, and a provision authorizes automatic withdrawal of payments from a bank account.  (*Id.*)  Like the Blankenship Lease, the Brassfield Lease contains various provisions, including a Personal Guaranty "[t]o induce Lessor to enter into this Lease" which also bears a signature for "Gary Brassfield" as Guarantor and states that "the undersigned unconditionally guarantees to Lessor the prompt payment when due of all of Lessee's obligations to Lessor under [] Lease …"  (R.45-5, at 8.)

---

[2] In their allegations related to Plaintiff Brassfield's claim, Plaintiffs' Amended Complaint refers to "Blankenship", stating "Timothy George, the sales person, left a credit card swiping machine at Blankenship's business, but said nothing about Blankenship signing any Lease."  (R.45, ¶ 35.)  The Court reasonably infers from the surrounding allegations involving Brassfield, that Plaintiffs' seemingly erroneous reference includes Lease Finance leaving a credit card swiping machine at Plaintiff Brassfield's business.

The Brassfield Lease also contains the same "Choice of Law; Arbitration" provision as the

Blankenship Lease which states:

> CHOICE OF LAW; ARBITRATION: Any unsettled claim or controversy, including any contract or tort claim, between or among us, you or any Guarantor related to this Lease, shall be determined by binding arbitration in accordance under the Commercial Arbitration Rules of American Arbitration Association, or if you choose, the Rules of Arbitration (Binding) of the Better Business Bureau. All statutes otherwise applicable shall apply. Judgment upon the arbitration award may be entered in any court having jurisdiction. In event you or Guarantor Defaults, these provisions regarding arbitration shall not apply to our right to repossess the Equipment. This Lease is made in interstate commerce. Any arbitration shall take place in Chicago, Illinois

(R.45, ¶ 40; R45-5, at 11.)

Defendant Lease Finance filed a claim against Plaintiff Brassfield in Cook County Small

Claims Court on September 25, 2013 and obtained an *ex parte* judgment for $2,753.00 plus costs

on January 28, 2014. (R.45, ¶ 41.) Along with the Brassfield Lease, Defendant Lease Finance

attached an additional agreement to its complaint in the Small Claims Court related to a

purported assignment. Specifically, Lease Finance attached a "Bill of Sale" between

"NATIONAL PROCESSING COMPANY, F/K/A RPSI, Inc., D/B/A/ RETRIEVER PAYMENT

SYSTEMS, a Nebraska Corporation" as "Seller" and "LEASE FINANCE GROUP, LLC, a

Delaware limited liability company" as "Purchaser". (R.45-5, at 12 ("Bill of Sale").) The Bill of

Sale refers to—but does not include a copy of—an "Assignment Agreement", dated January 1,

2006, that provides for "the sale and assignment by Seller to Purchaser of the Contract

Documents and the related Equipment under this Bill of Sale". (*Id.*) The Bill of Sale does not

contain an explicit reference to the Brassfield Lease. (*Id.*)

On March 19, 2014—after Lease Finance obtained the judgment against Brassfield on

January 28, 2014 for $2,753.00—Lease Finance mailed a "Pre-Judgment Notice" to Brassfield

indicating that it would attempt to obtain a judgment against Brassfield for $4,476.93,

demanding payment of the same within ten (10) days, and threatening liens on Brassfield's property and bank account as well as wage garnishment proceedings.  (R.45, ¶ 43; R.45-5, at 13 ("Judgment Notice Letter"); *id*., at 14 ("Pre-Judgment Notice Letter").)

## IV.    General Allegations

Plaintiffs allege that Defendants are engaged in a scheme—taking money out of customer bank accounts on an unauthorized basis, and then obtaining *ex parte* default judgments in violation of mandatory arbitration clauses if the customer takes action to stop the unauthorized withdrawals.  (*Id.*, ¶ 8.)  Plaintiffs allege that Pushpin and Lease Finance have filed hundreds of small claims cases in Cook County, Illinois—filing over 150 small claims cases in the first two weeks of July 2014 alone.  (*Id.*, ¶¶ 2, 4, 50; R.45-2, attached as Ex. 2 to Am. Compl.; R.45-3, attached as Ex. 3 to Am. Compl.)  Defendants base many of these small claims cases on forged signatures and they initiated them in violation of mandatory arbitration clauses.  (R.45, ¶¶ 5, 50.)  The amount in controversy in each case is usually less than $5,000.00—relatively small amounts that render the cases non-economical for out of state defendants to hire lawyers to contest the small claims suits and appear in Chicago, Illinois to file *pro se* court appearances.  (*Id.*, ¶ 47.)

Retriever Payment Systems is the Rep Code on the Blankenship Lease signed by Lease Finance and the signatory of the Brassfield Lease purportedly assigned to Lease Finance.  (*Id.*, ¶¶ 24, 37.)  Plaintiffs allege that although the Retriever Payment Systems website deceptively promises the "finest merchant services support team in the industry", the opposite is true.  (*Id.*, ¶ 25.)  Plaintiffs rely on a website, www.cardpaymentoptions.com, and allege it further links Retriever Payment Systems to Lease Finance, stating: "[t]here are multiple complaints online that claim that Retriever Payment Systems signs merchants up for 48-month, non-cancellable leases through [Lease Finance], a DBA of Northern Leasing Systems.  Aside from the poor

contract terms, Northern Leasing is notorious for poor service, deceptive advertising, and costly equipment." (*Id.*, ¶ 26.)

**LEGAL STANDARD**

Defendants move to dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). "A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A district court's analysis under Rule 12(b)(6) "rests on the complaint, and [the court] construe[s] it in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts alleged and drawing all permissible inferences in their favor." *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014); *see also Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 823 (7th Cir. 2014); *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). "[T]he complaint must supply 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). "A claim must be plausible rather than merely conceivable or speculative, meaning that the plaintiff must include 'enough details about the subject-matter of the case to present a story that holds together.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826-27 (7th Cir. 2014) (citations omitted).

## II.     Federal Rules of Civil Procedure 8(a) and 9(b)

Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). "[T]he complaint must supply 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Indep. Trust Corp.*, 665 F.3d at 935 (quoting *Twombly*, 550 U.S. at 556). "A claim must be plausible rather than merely conceivable or speculative, meaning that the plaintiff must include 'enough details about the subject-matter of the case to present a story that holds together.'" *Carlson*, 758 F.3d at 826-27 (citations omitted). A plaintiff's pleading burden "should be commensurate with the amount of information available" to him. *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1100 (7th Cir. 2015).

Under Rule 9(b), a party pleading fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Moreover, in pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8(a)(2). *See Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). Thus, "[t]he requirement of pleading fraud with particularity includes pleading facts that make the allegation of fraud plausible." *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014). Specifically, Rule 9(b) requires a pleading to state with particularity: "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.*

(citations omitted). "[T]he particularity requirement of Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli*, 631 F.3d at 441 (citation omitted).

## ANALYSIS

### I. Jurisdiction

Although not raised by the parties, "Federal Courts are obligated to inquire into the existence of jurisdiction *sua sponte*." *Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015). The Court has original jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA") which states "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant". *See* 28 U.S.C. § 1332(d)(2)(A). "Another provision of the [CAFA] forbids a district court from exercising jurisdiction if the plaintiff class numbers less than one hundred." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 772 (*citing* 28 U.S.C. § 1332(d)(5)).

Plaintiff Blankenship is a citizen of Alabama. (*See* R.1, ¶¶ 2, 23;[3] R.45, ¶ 9.) Plaintiff Brassfield is a citizen of Arkansas. (*See* R.1, ¶¶ 3, 23; R.45, ¶ 10.) Defendant Cohen is a citizen of New York. (*See* R.1 ¶ 23; R.45, ¶ 14.) Regardless of the citizenship of Defendants Pushpin and Lease Finance—both of which are limited liability companies and share citizenship with their respective members—the parties have minimal diversity. *See Eubank v. Pella Corp.*, 753

---

[3] The Court considers the Notice of Removal and original complaint attached to it in order to determine whether this case is properly before the Court. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (explaining that district courts may consider evidence outside the pleadings to make the necessary factual determinations to resolve their own jurisdiction); *see also Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002) ("[T]he district court had not only the right, but the duty to look beyond the allegations of the complaint to determine that it had jurisdiction to hear the [plaintiff's] claim").

F.3d 718, 721 (7th Cir. 2014) (finding federal jurisdiction existed under the CAFA's grant due to "at least minimal (as distinct from complete) diversity of citizenship"); *IP of A West 86th Street 1, LLC v. Morgan Stanley Mortg.. Capital Holdings, LLC*, 686 F.3d 361, 363 (7th Cir. 2012) ("[A] limited liability company shares the citizenship of its members …").  Furthermore, the putative class members allegedly exceed 100 members and the alleged amount in controversy exceeds $5,000,000.[4]  (R.1, ¶¶ 24, 25, 27; R.45, ¶¶ 2, 4, 5, 16.)  *See Dart Cherokee Basin Operating Co., LLC v. Owens*, ___ U.S. ___, 135 S.Ct. 547, 554, 190 L.Ed.2d 495 (2014) ("a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold").

## II.    ICFA Count (Count I)

The ICFA provides a remedy for "unfair methods of competition and unfair or deceptive acts or practices" in specified "commercial transactions."  *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (quoting 815 ILCS 505/2).  Specifically, the ICFA, 815 ILCS 505/1, *et seq.*, prohibits:

> …unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damages thereby.

815 ILCS 505/2.  In addition, Section 505/10a provides that "[a]ny person who suffers actual damages as a result of a violation of this Act, committed by any other person may bring an action against such person."  815 ILCS 505/10a.

---

[4] Plaintiffs do not dispute Defendants' allegations of citizenship, putative class member number, or amount in controversy in the Notice of Removal (R.1).

To state a claim under the ICFA, Plaintiffs must allege five elements: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) the damages were proximately caused by the defendant's deception. *See Armbrister v. Pushpin Holdings, LLC*, 896 F.Supp.2d 746, 754 (N.D. Ill. 2012) (*citing Hardaway v. CIT Group/Consumer Fin. Inc.*, 836 F.Supp.2d 677, 685 (N.D. Ill. 2011); *Martis v. Pekin Mem'l Hosp. Inc.,* 395 Ill. App. 3d 943, 334 Ill. Dec. 772, 917 N.E.2d 598, 603 (Ill. App. Ct. 2009). The pleading standard applicable to allegations of deceptive practices in violation of the ICFA requires sufficient particularity under Rule 9(b) because such allegations sound in fraud, whereas allegations of unfair practices need only meet the notice pleading standards of Rule 8(a). *See* Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 9(b); *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008); *McKenney-Becker v. Safeguard Properties, LLC, et al.*, No. 14-cv-4514, 2015 WL 175020, at *9 (N.D. Ill. Jan. 13, 2015).

Defendants argue several grounds for dismissal of Plaintiffs' ICFA claim. First, Defendants argue that Plaintiffs' ICFA claim is implausible, does not meet the heightened pleading standards required under Rule 9(b), and is improperly asserted against them. Defendants further argue that Plaintiffs have failed to sufficiently state a claim for relief under the ICFA because Defendants committed no deceptive or unfair acts and because Plaintiffs failed to allege reliance, are not "consumers", do not assert allegations that involve "trade" or "commerce", and fail to allege actual damages that Defendants proximately caused. The Court addresses each argument in turn.

### A.    Deceptive and Unfair Practices

Plaintiffs allege Defendants engaged in both deceptive and unfair practices.  (R.45, ¶ 61-62.)  Specifically, Plaintiffs allege that Defendants' acts of filing suits against persons whose signatures were forged on Non-Cancellable Leases are unfair and deceptive.  (*Id.*, ¶ 61.) Plaintiffs allege that "Retriever Payments Systems" caused [Blankenship's] signature to be forged" and that someone by the name of "Timothy George" left a credit card swiping machine at Brassfield's business and that his Lease Agreement was a forgery.  (R.45, ¶¶ 20, 35, 36.)

To determine whether a practice is unfair under the ICFA, the Court considers whether the practice offends public policy, whether it is immoral, unethical, oppressive, or unscrupulous, and whether it causes substantial injury to consumers.  *See In re Michaels Stores Pin Pad Litig.*, 830 F.Supp.2d at 525 (*citing Robinson v. Toyota Motor Credit Corp.,* 201 Ill. 2d 403, 266 Ill. Dec. 879, 775 N.E.2d 951, 961 (2002)).  A plaintiff does not need to satisfy all three criteria to support a finding of unfairness.  *Id.*  A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.  *Id.*  A practice is deceptive if it "creates a likelihood of deception or has the capacity to deceive."  *Aliano v. Louisville Distilling Co., LLC*, No. 15 C 00794, 2015 WL 4429202, at *5 (N.D. Ill. July 20, 2015) (*citing Bober v. Glaxo Wellcome PLC,* 246 F.3d 934, 938 (7th Cir. 2001).  Plaintiffs must allege facts suggesting a deceptive practice with particularity.  *See id.*  To satisfy the heightened pleading standard of Rule 9(b), "the circumstances [of the alleged misrepresentation] must be pleaded in detail.  The who, what, when, where, and how: the first paragraph of any newspaper story."  *O'Brien v. Landers*, No. 1:10-CV-02765, 2011 WL 221865, at *4 (N.D. Ill. Jan. 24, 2011) (*citing DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)).

Defendants contend that Plaintiffs' allegations of deceptive and unfair acts are limited to Defendants' actions in filing suits in small claims courts. This narrow reading, however, ignores other facts alleged as deceptive and unfair, e.g., the forged leases, misleading collection demand letters, faulty assignments that do not refer to either the Blankenship Lease or the Brassfield Lease, and filing small claims court actions premised on the forged leases. Plaintiffs allege that Defendants are engaged in a scheme—making unauthorized withdrawals from customer bank accounts and then obtaining *ex parte* default judgments in violation of mandatory arbitration clauses if the customer stops the unauthorized withdrawals. (*Id.* ¶ 8.) Regarding the class allegations, Plaintiffs assert that "many of the hundreds of cases filed by Pushpin and Lease Finance are based on forged signatures and initiated in violation of mandatory arbitration clauses." (*Id.*, ¶ 5.) Specifically, Plaintiff Blankenship alleges that the credit card machine was brought to his business on a day when he was absent and Blankenship first saw a lease, purportedly bearing his signature, when Lease Finance started sending collection demand letters to him and making collection demands. (R.45, ¶ 20.) Similarly, Plaintiff Brassfield alleges that the credit card machine was left at his business without any discussion of a lease. (*Id.*, ¶ 35.) Brassfield further alleges that no one ever told him about a lease or asked him to sign one and he only learned about his signature on the lease when Lease Finance started making collection demands. (*Id.*, ¶ 36.) In addition, Plaintiffs allege that after the small claims had already entered judgment against Brassfield, Defendant Lease Finance sent misleading letters demanding a payment totaling $2,000 more than the default judgment. (*See id.*, ¶ 43; R.45-5, at 13-14.) Plaintiff Blankenship further alleges that the deceptive actions took place in 2002, the Non-Cancellable Lease was dated in 2002, that over a period of seven to eight months Defendants automatically deducted money from his account and did not process his credit card transactions,

and that Defendants sent misleading collection demands.  (*See e.g., id.*, ¶¶ 19, 20, 27-29.)

Plaintiff Brassfield alleges that the deceptive actions took place related to a Non-Cancellable

Lease dated March 2010 and that over a period of time Defendants automatically deducted

money from his account for a defective machine and sent deceptive and misleading collection

notices in an attempt to collect on an alleged debt, even after entry of default judgment.  (*See

e.g., id.*, ¶¶ 35, 38, 39, 42-44.)  These allegations identify the misleading conduct, who conducted

it, when it occurred, and how Plaintiffs were deceived.

Plaintiffs further allege that Defendant Cohen owns, controls and operates numerous shell

entities—including Pushpin and Lease Finance—which sell equipment leases, buy debts, and

collect debts acquired through purchase of leases.  (R.45, ¶ 14.)  Indeed, Defendant Cohen

signed—as President of Pushpin Holdings, LLC—Blankenship's Assignment and Assumption

Agreement and Defendant Lease Finance signed Brassfield's Bill of Sale.  (*See id.*, ¶ 15; R.45-4,

at 10-11; R.45-5, at 12.)  These assignments form a basis for Plaintiffs' allegations that

Defendants' misrepresentations deceived Plaintiffs as part of the scheme to collect on Plaintiffs'

debt allegedly owed under the Non-Cancellable Leases.  Practices surrounding debt collection

can form the basis for an ICFA claim, if the plaintiff disputes the underlying debt or the

defendants' right to collect on the debt.  *See Maldanado v. Freedman Anselmo Lindberg, LLC*,

No. 14 C 10176, 2015 WL 2330213, at *4 (N.D. Ill. May 14, 2015).  Indeed, "debt collection

practices are embraced by the [ICFA]".  *See Johnson v. Pushpin Holdings LLC*, No. 13 C 7468,

2015 WL 1345768, at * 9 (N.D. Ill. Mar. 23, 2015) (*citing People ex rel. Daley v. Datacom Sys.

Corp*, 146 Ill. 2d 1, 31, 165 Ill. Dec. 655, 668, 585 N.E.2d 51, 64 (1991) ("Daley")); *see also

Maldonado*, 2015 WL 2330213, at *4 (*citing Grant–Hall v. Cavalry Portfolio Servs., LLC,* 856

F.Supp.2d 929, 945 (N.D. Ill. 2012)) ("debt collectors may violate the ICFA if they fabricate the debt or lie about their right to collect on a debt").

Based on Plaintiffs' allegations of forgery on leases they only first saw when they received collection notices, letters misrepresenting judgments owed under the Non-Cancellable Leases, assertion of rights to collect on a debt based on faulty assignments, and Defendants' similar conduct in hundreds of cases filed in Illinois involving other business owners, Plaintiffs have sufficiently alleged a claim of deceptive practices and unfair practices under the ICFA. *See e.g., Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F.Supp.2d 929, 942 (N.D. Ill. 2012) (finding a deceptive practices claim adequately pled where the plaintiff alleged the defendant "[m]isrepresent[ed] to consumers and courts that it had the right to file suit" and defendants intended the plaintiff to rely on that deceptive practice); *see Jackson v. Payday Fin. LLC*, 79 F.Supp.3d 779, 788 (N.D. Ill. 2015) (finding an unfair practices claim adequately pled where the plaintiff alleged a practice of contracting for and collecting finance charges, interest, and fees, from Illinois residents, in excess of the amounts permitted by law).

## B. "Reliance"

Defendants assert that Plaintiffs fail to plead that Defendants intended them to rely on any deceptive or unfair practice. The Court disagrees. Plaintiffs allege that Defendants deceived them by producing the Non-Cancellable Leases at a time when they were ready to collect on their alleged debt. Plaintiffs do not allege that they had knowledge of the Non-Cancellable Leases prior to that time and Defendants concealment of the leases from Plaintiffs constitutes concealment of information upon which it can be expected that Plaintiffs would rely in deciding to enter into an agreement for leasing equipment with a lessor. *See Lateef v. Pharmavite LLC,* No. 12 C 5611, 2013 WL 1499029, at *3 (N.D. Ill. Apr. 10, 2013) (*citing Wigod v. Wells Fargo*

*Bank, N.A.,* 673 F.3d 547, 575 n. 13 (7th Cir. 2012) (collecting cases)) ("[o]missions are also

actionable under the ICFA if they are intended to induce the plaintiff's reliance"); *see also*

*Haymer v. Countrywide Bank, FSB*, 2011 WL 2790172, at *4 (N.D. Ill. July 15, 2011) (finding

the plaintiffs allegations sufficient to show reliance under the ICFA where the defendants were

shown to have omitted or concealed a material fact in the loan application process); *Capiccioni v.*

*Brennan Naperville, Inc.,* 339 Ill. App. 3d 927, 274 Ill. Dec. 461, 791 N.E.2d 553, 558 (Ill. App.

Ct. 2003) ("A defendant need not have intended to deceive the plaintiff; innocent

misrepresentations or omissions intended to induce the plaintiff's reliance are actionable under

[the ICFA]"). Indeed, as alleged, Defendants intended Plaintiffs to rely on the absence of any

formal agreement to induce them to agree to continue using the machines—feeling that they

were under no obligations. Plaintiffs suffered actual damages (*see infra,*Analysis II.E) from

unauthorized withdrawals and default judgments due to Defendants' alleged deceptive acts.

These allegations sufficiently plead reliance under the ICFA.

      **C.**     **"Trade" or "Commerce"**

      The ICFA defines "trade" and "commerce" to mean "the advertising, offering for sale,

sale, or distribution of any services and any property, tangible or intangible, real, personal or

mixed, and any other article, commodity, or thing of value wherever situated, and shall include

any trade or commerce directly or indirectly affecting the people of [Illinois]." 815 ILCS

505/1(f). Additionally, the ICFA provides that it "shall be liberally construed to effect the

purposes thereof." 815 ILCS 505/11a.

      Defendants argue that Plaintiffs fail to allege that Defendants advertise or sell any

product or service. Defendants cite to *Daley*, (*see supra*, Analysis, II.A)—in which the Illinois

Supreme Court explicitly states "debt collection practices are embraced by the [ICFA]"—and

attempt to distinguish their actions with the simple assertion that "Pushpin and LFG LLC do not collect debt for anyone. No one has hired them to do so." (R.53, at 12; *see also* R.64, Defs' Reply, at 10.) *See Johnson*, 2015 WL 1345768, at * 9 (*citing Daley*, 146 Ill. 2d at 31). Taking the facts in the light most favorable to Plaintiffs, however, Pushpin "has no other business other than debt collection" and Pushpin and Lease Finance are shell entities for Defendant Cohen who "buys debts, and collect[s] debts acquired through purchase of leases." (R.45, ¶¶ 11, 14.) Accordingly, Plaintiffs have sufficiently alleged "trade" or "commerce" under the ICFA.

      **D.**       **"Consumers"**

A "consumer" under the ICFA is defined as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e); *see also McKenney-Becker*, 2015 WL 170520, at *8. Specifically, Defendants contend that the dispute concerns leases, not the purchase or contract to purchase anything, and because Plaintiffs are businesspeople who contest the authenticity of their signatures on the Non-Cancellable Leases, they cannot also argue they are purchasers of merchandise. Plaintiffs do not directly assert that they are not consumers under the ICFA, but rely on cases where non-consumers were found to have standing under the ICFA because their claims involved trade or commerce and implicated consumer protection concerns. Indeed, a right of action under the ICFA is not limited to "consumers" as "*[a]ny person* who suffers actual damage as a result of a violation of [the ICFA] committed by another person may bring an action against such person." 815 ILCS 505/10a(a); *Williams Elecs. Games, Inc. v. Garrity,* 366 F.3d 569, 579 (7th Cir. 2004) (noting that section 10(a) of the ICFA "does not protect just consumers, but any person"); *see also* 815 ILCS 505/1 *et seq.*, titled as "[a]n Act to protect consumers and borrowers and businessmen against fraud, unfair methods of

competition and unfair or deceptive acts"). "In the context of an ICFA claim based upon a breach of contract between two businesses, courts have rejected this argument"—that a non-consumer is precluded from alleging a violation of the ICFA. *Frazier v. U.S. Bank Nat'l Ass'n*, 11 C 8875, 2013 WL 1385612, at *3 (N.D. Ill. Apr. 4, 2013) (citations omitted). Instead, in these circumstances, a non-consumer plaintiff may prevail by alleging a consumer nexus with the alleged conduct. *Id.* To determine whether Plaintiffs have met the consumer nexus test, the Court looks to whether Plaintiffs have pled: (1) that [their] actions were akin to a consumer's actions to establish a link between [them] and consumers; (2) how defendant's representations … concerned consumers other than Plaintiff; (3) how defendant's particular acts involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers. *See Thrasher-Lyon v. Illinois Farmers Ins. Co.* 861 F.Supp.2d 898, 912 (N.D. Ill. 2012) (citations omitted); *see also Brody v. Finch Univ. of Health Sciences/The Chicago Med. Sch.,* 298 Ill. App. 3d 146, 232 Ill. Dec. 419, 698 N.E.2d 257, 268 (1998). "Put another way, a non-consumer plaintiff must allege "conduct [that] involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *See Roppo v. Travelers Cos.*, ___ F.Supp.3d ___, 2015 WL 1777469, at *8 (N.D. Ill. Apr. 16, 2015) (*citing Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.,* 190 Ill. App. 3d 524, 137 Ill. Dec. 409, 546 N.E.2d 33, 41 (1989)).

Here, Plaintiffs allege a series of "Common Allegations" that reference themselves as typical victims of Defendants' practices—"sole proprietors or persons operating small businesses". (R.45, ¶ 45.) Plaintiffs further allege that the small claims suits filed by Defendants in Illinois involve proprietors or small business owners—located throughout the country—who were similarly involved with Non-Cancellable Leases, alleged forgery, and default judgments.

(*See e.g., id.*, ¶¶ 5, 8, 12, 45-47, 49, 50.)  In addition, Plaintiffs provide a link between Retriever

Payment Systems—the company named on the Blankenship Lease and the Brassfield Lease—

and Lease Finance, alleging that Retriever Payment Systems "deceptively promises the 'finest

merchant services support team in the industry'" and that "[t]here are multiple complaints online

that claim that Retriever Payment Systems signs merchants up for 48-month, non-cancellable

leases through Lease Finance Group …".  (*Id.*, ¶¶ 25, 26.)  Viewing these allegations in the light

most favorable to Plaintiffs, Plaintiffs have sufficiently alleged a consumer nexus to survive a

motion to dismiss.  *See Frazier*, 2013 WL 1385612, at *4 (finding the plaintiffs allegations that

the defendants had an "established" practice of tracking loans and unlawfully ordering property

removal services during periods when the plaintiffs and other loan borrowers' had a right to

remain in their home sufficient to plead a "consumer nexus" under the ICFA); *CustomGuide v.

CareerBuilder, LLC*, 813 F.Supp.2d 990, 1001 (N.D. Ill. 2011) (allegations that the defendant

"intended that general consumers and the general public rely on its unfair, unlawful and

deceptive business practices" sufficient).  Accordingly, Plaintiffs have sufficiently pled a

"consumer nexus" as non-consumers under the ICFA.  *See e.g., Bank One Milwaukee v. Sanchez,*

336 Ill. App. 3d 319, 324, 270 Ill. Dec. 642, 646-47, 783 N.E.2d 217, 221-22 (Ill. App. Ct. 2003)

(holding that there was a consumer nexus when the plaintiff alleged that "a merchant bound her

to a commercial transaction through a fraudulent act").

     **E.**    **Actual Damages**

Only a person who suffers actual damage may bring an action under the ICFA.  815 ILCS

505/10a(a).  The plaintiff must allege a purely economic injury, measurable by the plaintiff's

loss.  *See In re Michaels Stores Pin Pad Litig.,* 830 F.Supp.2d 518, 526 (N.D. Ill. 2011) (*citing

Morris v. Harvey Cycle & Camper, Inc.,* 392 Ill. App. 3d 399, 331 Ill. Dec. 819, 911 N.E.2d

1049, 1053 (Ill. App. Ct. 2009) and *Mulligan v. QVC, Inc.,* 382 Ill. App. 3d 620, 321 Ill. Dec. 257, 888 N.E.2d 1190, 1197–98 (Ill. App. Ct. 2008) ("If the plaintiff is not materially harmed by the defendant's conduct, however flagrant it may have been, there may be no recovery")).

Plaintiffs maintain that they suffered actual damages of various forms. Both Plaintiffs Blankenship and Brassfield argue that due to the default judgment entered against them, they incurred economic harm. (R.45, ¶¶ 3, 23, 41.) Plaintiff Blankenship further alleges that the machine provided by Defendants did not work properly in that some transactions were not processed at all and that for other transactions, that were processed, Lessor did not directly deposit the money into his bank account within 48 hours—both resulting in a loss of income over a period of time. (*Id.*, ¶¶ 27, 28.) In addition, Plaintiff Blankenship alleges that Defendants made multiple unauthorized monthly withdrawals for $39.95 for a defective machine and made an additional $500 withdrawal after Blankenship turned over his machine to Lease Finance. (*Id.*, ¶ 31.) Plaintiff Brassfield alleges he was "damaged by having payments taken from his bank account for a defective machine and by having an *ex parte* judgment entered against him which will adversely affect his consumer credit report." (*Id.*, ¶ 44.) Defendants argue that Plaintiffs' allegations are insufficient because "Plaintiffs do not allege that they have satisfied the judgments entered against them or that they have incurred actual damages as a result of alleged misleading letters." (R.53, at 13.) Defendants further assert that any claims of adverse affects on their credit reports are "too speculative" to warrant consideration. (*Id.*) Taking the facts alleged in the light most favorable to Plaintiffs, however, the allegations suffice to plead actual damage due to the unprocessed transactions and unauthorized withdrawals, in addition to the fact that the Court can reasonably infer that—regardless of any alleged future harm from their credit reports—Plaintiffs suffered economic loss and have not been reimbursed for any of the loss

related to the claims asserted here.  Accordingly, Plaintiffs sufficiently allege that they suffered actual damages in the form of economic loss from unauthorized withdrawals and unlawful default judgments.

F.    **Proximate Cause**

To prevail under the ICFA, "a plaintiff must demonstrate that the defendant's conduct is the proximate cause of the injury." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) (*citing Oliveira v. Amoco Oil Co.,* 201 Ill.2d 134, 267 Ill. Dec. 14, 776 N.E.2d 151, 160 (2002)). "Unlike an action brought by the Attorney General under [the ICFA], which does not require that 'any person has in fact been misled, deceived or damaged[,]' ... a private cause of action brought under [ICFA] requires proof of 'actual damage' ... [and] proof that the damage occurred 'as a result of' the deceptive act or practice." *Id.* (citations omitted)).  Plaintiffs must, therefore, set forth sufficient allegations to find it plausible that "but for" Defendants' unfair and deceptive acts, Plaintiffs would not have been damaged, i.e., would not have incurred economic harm from enforcement of the unlawful Non-Cancellable Leases.

Defendants argue that because Plaintiffs do not allege that any of Defendants forged the Non-Cancellable Leases or Personal Guaranties, Plaintiffs cannot establish proximate cause for any alleged damages.  Defendants' argument fails, however, because as discussed above, Plaintiffs do not so narrowly focus their allegations under the ICFA on the act of forgery, but rather include the act of forgery, along with the later provision of a forged lease, the filing of an unlawful small claims action based on a faulty assignment, and misrepresentations in letters mailed to demand collection of an unlawful debt.  Plaintiffs have also alleged that Defendants were involved at each of these later steps.  In particular, Plaintiffs have alleged that (1) Defendant Lease Finance signed as Lessor on the Blankenship Lease (R.45-4, at 8); (2)

Defendant Cohen signed as "President" of Pushpin and "Buyer" on the Assignment and Assumption Agreement purportedly related to the Blankenship Lease (*id.*, at 11), (3) Pushpin filed a small claims court action against Blankenship resulting in a default judgment (*id.*, at 2-7); (4) Lease Finance—Defendant Cohen's alleged alter ego—signed as "Purchaser" on the Bill of Sale purportedly related to the Brassfield Lease (*id.*, at 12); (5) Lease Finance mailed Plaintiff Brassfield a Pre-Judgment Notice Letter on March 19, 2014 and a Judgment Notice Letter on April 24, 2014 (*id.*, at 13-14); and (6) Lease Finance filed a small claims court action against Brassfield resulting in a default judgment (*id.*, at 2-7). These allegations specific to Defendants and linked to the default judgments and actions related to enforcement of the Non-Cancellable Leases sufficiently plead proximate cause for Plaintiffs' alleged damages under the ICFA.

In addition, the Illinois Supreme Court has rejected the argument that "deception must always be direct between the defendant and the plaintiff to satisfy the requirement of proximate cause under the [ICFA]" in the context of an ICFA claim based upon deceptive advertising. *See Shannon v. Boise Cascade Corp.,* 208 Ill.2d 517, 525–26, 281 Ill. Dec. 845, 805 N.E.2d 213, 218 (2004) (noting that "traditional privity [is] not a requirement in fraud actions" and that it is sufficient that "the statements by the defendant be made with the intention that it reach the plaintiff and influence his action and that it does reach him and that he does rely upon it") (citations omitted). Plaintiffs' allegations provide connections between Defendants and each stage of the alleged deceptive conduct (1) from the first interactions with Retriever Payment Systems—alleged to be connected with Defendant Lease Finance (R.45, ¶¶ 25, 26); (2) from the alleged assignment of the Non-Cancellable Leases by Pushpin, Cohen and Lease Finance (*id.*, ¶ 15; R.45-4, at 12; R.45-5, at 12); and (3) through to filing of the lawsuits in small claims court by Pushpin and Lease Finance (R.45-4; R.45-5). These alleged actions sufficiently plead direct

and indirect deceptive acts by Defendants linked to Plaintiffs' actual damages. Accordingly, Plaintiffs have sufficiently alleged that Defendants deceptive and unfair conduct was the proximate cause of their actual damages.

### III.    Breach of Contract Claim (Count II)

Under Illinois law, a breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C 6455, 2010 WL 1655089, at *11 (N.D. Ill. Apr. 22, 2010). Defendants argue that Plaintiffs have failed to allege each of the required elements for their breach of contract claim.

### A.    The "Valid and Enforceable Contract"

First, Defendants assert that the Court should dismiss Plaintiffs breach of contract claim as to Defendant Cohen because the Amended Complaint does not contain any allegations related to a contract with Cohen. Plaintiffs fail to identify factual allegations in the Amended Complaint to support the elements in a breach of contract claim, but rather assert that the mandatory arbitration clause in the Lease Agreements applies and the Court should liberally construe it. Plaintiffs do not identify a factual basis for the validity and enforceability of the Lease Agreements. Indeed, Plaintiffs' Amended Complaint is filled with allegations that the Lease Agreements were forged and entered into without the authorization or knowledge of Plaintiffs Blankenship and Brassfield. (*See e.g.,* R.45, ¶ 20 ("Blankenship never signed the Lease and did not even see it until Lease Finance started sending collection letters to him and making collection demands"); *id.*, ¶ 23 ("The Lease is not enforceable against Blankenship due to the forged signature"); *id.*, ¶ 36 ("Brassfield's signature was forged on the Non-Cancellable Lease and the accompanying Guarantee"); *id.*, ¶ 41 ("The Lease is not enforceable against Brassfield because

Brassfield's signature is forged")). Although Plaintiffs may plead a breach of contract claim in the alternative, Plaintiffs do not provide allegations for such a claim. Accordingly, Plaintiffs have failed to sufficiently allege the Lease Agreements are valid and enforceable contracts in order to support a breach of contract claim, and the Court dismisses Count II without prejudice.

### B. Substantial Performance

Second, Defendants assert that Plaintiffs fail to allege substantial performance under the applicable Lease Agreements.[5] A "party cannot sue for breach of contract without alleging and proving that he has himself substantially complied with all the material terms of the agreement." *Costello v. Grundon*, 651 F.3d 614, 640 (7th Cir. 2011) (citation omitted). Again, Plaintiffs ignore Defendants arguments regarding substantial performance. Plaintiffs do not point the Court to allegations that support Plaintiffs' obligations and responsibilities under the Lease Agreements. Nor do they provide factual allegations that demonstrate Plaintiffs' actions taken in line with their obligations under the Lease Agreements, aside from the fact that Plaintiffs each made initial monthly payments to Defendants—at least until the credit card machines stopped working properly. (*See* R.45, ¶¶ 27-30, 38, 39, 44.) Plaintiffs failed to include any allegations regarding substantial performance, thus they have failed to sufficiently plead a claim for breach of contract.

### C. Defendants' Breach

Third, Defendants assert that Plaintiffs have failed to allege that Defendants breached the Lease Agreements. According to Plaintiffs, Defendants failed to honor the mandatory arbitration

---

[5] Defendants also contend that Plaintiffs did not comply with their obligations as Guarantors under the Personal Guaranties. This is a factual issue, however, and thus inappropriate for resolution at the pleading stage. *See Cushing v. City of Chicago,* 3 F.3d 1156, 1163 (7th Cir. 1993) (holding that determinations that necessarily involve issues of fact are "inappropriate for resolution in a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6)").

clause resulting in a breach of the contract. Defendants contend that Plaintiffs' focus on the mandatory arbitration clause is irrelevant to the dispute here because the Lease Agreements and the Personal Guaranties are "two separate and distinct contractual agreements" and the "operative agreement in the state court actions is the Personal Guaranty and the Personal Guaranty does not contain an arbitration clause." (R.53, at 15.) Plaintiffs have alleged that Defendants breached the Lease Agreement and to the extent Defendants argue they are not parties to those agreements, these are factual issues to be resolved at a later stage. For the purposes of this motion to dismiss, Plaintiffs have sufficiently alleged breach.

### D. Damages

Lastly, Defendants assert that even if they breached the Lease Agreements due to failure to engage in mandatory arbitration, Plaintiffs have still failed to allege damages. In particular, Defendants contend that Plaintiffs failed to allege they satisfied state court judgments and that any additional damages, e.g., deductions of money from Plaintiffs' checking accounts, do not stem from Defendants' alleged breach of a failure to seek arbitration. Plaintiffs simply respond that the "relief sought by Plaintiffs includes a declaration that the disputes are subject to mandatory arbitration". (R.63, Pl. Opp'n, at 15 (*citing* R.45, at 14).) Taking the facts alleged in the light most favorable to Plaintiffs, however, the Court can reasonably infer that Plaintiffs satisfied the default judgments. Accordingly, Plaintiffs have sufficiently pled damages stemming from Defendants' alleged breach of the Lease Agreements based on their failure to engage in mandatory arbitration and instead filing of suits in small claims court.

## IV. Defendants' Request to Strike Class Allegations

Defendants ask the Court to strike Plaintiffs' class allegations pursuant to Rule 23 because the pleadings are facially defective and establish that a class action cannot be maintained.  (R.53, at 16.)

### A. Legal Standard

Rule 23(c)(1)(A) directs that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A).  Although "[m]ost often it will not be practicable' for the court to do that at the pleadings stage, … sometimes the complaint will make it clear that class certification is inappropriate."  *Hill v. Wells Fargo Bank, N.A.,* 946 F.Supp.2d 817, 829 (N.D. Ill. 2013) (*citing General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)); *see also Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) ("Consistent with [Rule 23(c)(1)(A)'s] language, a court may deny class certification even before the plaintiff files a motion requesting certification.")  In those situations, a court may determine that class certification is inappropriate before the parties conduct class discovery.  *See Bohn v. Voiron, Inc.*, No. 11 C 8704, 2013 WL 3975126, at *5 (N.D. Ill. Aug. 1, 2013).

If the plaintiff's class allegations are facially and inherently deficient, for example, "a motion to strike class allegations … can be an appropriate device to determine whether [the] case will proceed as a class action."  *See Bohn*, 2013 WL 3975126, at *5; *Wolfkiel v. Intersections Ins. Servs. Inc.*, No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010); *Muehlbauer v. General Motors Corp.*, 431 F.Supp.2d 847, 870 (N.D. Ill. 2006).  If, on the other hand, the dispute concerning class certification is factual in nature and "discovery is needed to determine whether a class should be certified," a motion to strike class allegations at the pleading stage is

premature.  *See Wright*, 2010 WL 4962838, at *1; *Santiago v. RadioShack Corp.*, No 11 C 3508, 2012 WL 934524, at *4 (N.D. Ill. Feb. 10, 2012); *see also Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) ("Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, … a decision denying class status by striking class allegations at the pleading stage is inappropriate.")

To obtain class certification under Rule 23, a plaintiff must satisfy the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one subsection of Rule 23(b).  *See Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).  "Failure to meet any of [Rule 23's] requirements precludes class certification."  *Harper*, 581 F.3d at 513 (*quoting Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)).

### B.      Defendants' Challenges to the Putative Classes

In this case, Plaintiffs' Amended Complaint alleges two putative classes.  The first putative class consists of "all persons who were sued in small claims court in the last ten years in the Circuit Court of Cook County, Illinois[,] by the Class Action Defendants in violation of the mandatory arbitration clauses".  (R.45, ¶ 53.)  The second putative class consists of "all persons who were sued in small claims court in the last three years on Leases where their signature was forged in violation of the [ICFA]".  (*Id.*)  Defendants contend that Plaintiffs' fraud claims are "plaintiff-specific" and make it unlikely that Plaintiffs will meet the requirements of commonality.[6]  (R.53, at 16.)  Defendants argue that Plaintiffs fail to allege the circumstances of

---

[6] Defendants also argue that Plaintiffs claims "are particularly unlikely to meet the predominance requirement because they are 'plaintiff-specific'".  (R.53, at 17.)  Although the requirements for predominance are similar to those for commonality, predominance is one of the optional required Rule 23(b) requirements.  *See Harper*, 581 F.3d at 513; *see also Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___,

their forgery story as common to all putative class members and indeed, fail to allege any facts that permit an inference that the putative class members are somehow affected by the same particularized facts. (*Id.*) Defendants contend that the circumstances of the named Plaintiffs—Blankenship and Brassfield—demonstrate the fact-intensive nature of the fraud claims and do not meet the commonality requirements and that any damages claims would also be highly fact-specific. (*Id.*, at 17-18.) The Court therefore turns to the Amended Complaint and the Class Allegations to determine whether they "are facially and inherently deficient" such that they warrant dismissal. *See Bohn*, 2013 WL 3975126, at *5.

### C.      Commonality and Plaintiffs' ICFA Claims

Commonality requires a plaintiff to show that "questions of law or fact common to the class" exist. *See* Fed. R. Civ. P. 23(a)(2). To establish commonality, a plaintiff must do more than raise "common questions—even in droves" in that the plaintiff must show that a class-wide proceeding will "generate common *answers* apt to drive the resolution of the litigation." *See Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (internal quotations omitted; emphasis in original). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 815 (7th Cir. 2012) (*quoting Blades v. Monsanto Co.*, 400 U.S. 562, 566 (8th Cir. 2005)). If, however, "the same evidence will suffice for each member to make a

---

131 S.Ct. 2541, 2548, 180 L.Ed.2d 374 (2011). Because Plaintiffs have not yet specified what subsection of Rule 23(b) the class should be certified under, analysis of Plaintiffs claims for meeting the predominance requirement is premature. The requirements for predominance, however, are similar to those for commonality, which is one of the unavoidable requirements for class certification under Rule 23(a) and is further addressed herein. *See Wal-Mart Stores, Inc.*, 131 S.Ct. at 1549-50; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 814 (7th Cir. 2012).

prima facie showing, then it becomes a common question. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2551 (citations omitted). This does not mean, however, "that they have all suffered a violation of the same provision of law." *Id.*

Having dismissed the breach of contract claim, the Court focuses on the elements of the ICFA claim. The Court first looks to the unfair practices claim. To determine whether a business practice is unfair, the Court considers "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson*, 266 Ill. Dec. 879, 775 N.E.2d at 960.

Although devoid of detailed facts, Plaintiffs assert the following question of fact and law as common to the members of the putative class for their ICFA claim:

   a.   Whether the conduct of the Class Action Defendants was a violation of the [ICFA];

   b.   Whether the Class Action Defendants regularly file suit in violation of mandatory arbitration clauses.

(R.45, ¶ 55.)

Unfairness under the ICFA "depends on a case-by-case analysis," *Siegel*, 612 F.3d at 935, however, Plaintiffs have alleged a series of Common Allegations that, if proven to be true by evidence obtained during the discovery process, could meet the commonality requirement for certification of the class. In particular, Plaintiffs allege common facts surrounding the alleged forgery and subsequent applicability of the Leases. (R.45, ¶ 45.) Plaintiffs further allege that "[t]he persons that are the victims of these practices are typically sole proprietors or persons operating small business." (*Id.*) In addition, Plaintiffs allege facts commonly shared between the Lease Agreements, for example, that they each: (1) have signature lines typically identifying

the Lessee as an individual, (2) have Personal Guaranty provisions, (3) have mandatory arbitration agreements which have language of the arbitration clauses including actions relating to the Guarantees, and (4) that the Lessees as individuals would have benefits from the arbitration clause, if the signatures were not forged. (*Id.*, ¶ 46.) Plaintiffs also allege the amounts in controversy are usually less than $5,000 and that these relatively small amounts present the out of state defendants with a situation where it is not economical to hire lawyers to contest the small claims suits. (*Id.*, ¶ 47.) The Plaintiffs further allege facts common to the method of service on the class members in that they are often served at addresses which are no longer valid and that the documents relied upon by the Defendants in the small claims actions are also invalid on their face, even apart from the forgeries. (*Id.*, ¶¶ 48, 49.) Defendants' disputes with these allegations are highly factual in nature and "discovery is needed to determine whether a class should be certified," making it premature to strike class allegations at this stage. *See Wright*, 2010 WL 4962838, at *1; *Santiago v. RadioShack Corp.*, No 11 C 3508, 2012 WL 934524, at *4 (N.D. Ill. Feb. 10, 2012); *see also Boatwright*, 2011 WL 843898, at *2.

The same result is true for Plaintiffs' deceptive practices claim under the ICFA. A practice is deceptive if it "creates a likelihood of deception or has the capacity to deceive." *Aliano v. Louisville Distilling Co., LLC*, No. 15 C 00794, 2015 WL 4429202, at *5 (N.D. Ill. July 20, 2015) (*citing Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)). Plaintiffs generally rely on the same common allegations to establish deceptive practices as they do for unfair practices. Plaintiffs allege that Defendants perpetrated a scheme—forging Non-Cancellable Leases, making unauthorized withdrawals from customer bank accounts, obtaining *ex parte* default judgments in small claims court based on violation of mandatory arbitration clauses of the Leases based on misrepresentations of inadequate and incomplete

documentation of assignment. (*Id.*, ¶¶ 8, 20-22, 32-33.) Defendants base many of these small claims cases on forged signatures on the Lease Agreements. (*Id.*, ¶¶ 5, 50.) Each of the Common Allegations addressed above is also applicable to the deceptive practices claim under the ICFA and sufficiently plead a class allegation for a claim under the ICFA sounding in fraud. It would be premature for the Court to strike class allegations on the pleadings without affording Plaintiffs the opportunity to identify individuals who have been subjected to a common set of practices that state an ICFA unfairness or deceptive acts claim. *See Wright*, 2010 WL 4962838, at *1 (explaining that when a dispute concerning class certification is factual in nature and "discovery is needed to determine whether a class should be certified," a motion to strike class allegations at the pleading stage is premature); *Boatwright*, 2011 WL 843898, at *2 ("[b]ecause a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, … a decision denying class status by striking class allegations at the pleading stage is inappropriate"); *Hill v. Wells Fargo Bank, N.A.*, No. 12 C 7240, 2015 WL 232127, at *16 (N.D. Ill. Jan. 16, 2015) (finding it premature to strike class allegations at the pleading stage for ICFA unfairness claim); *accord. Thrasher-Lyon*, 861 F.Supp.2d at 913 (*citing Daley*, 165 Ill. Dec. 655, 585 N.E.2d at 66) (declining to dismiss the plaintiff's complaint regarding whether the letters and notices the defendants sent to the plaintiff were deceptive as it "is a factual issue which must be decided by the trier of fact").

Accordingly, at this early stage, Plaintiffs have made a prima facie showing on the proposed common questions of law and fact for the putative classes, and with the aid of additional evidence during discovery will be provided the opportunity to certify the class by motion for class certification, which Defendants can challenge at that time. Thus, the Court denies Defendants' motion to strike Plaintiffs' class allegations without prejudice.

## V.    Scandalous Allegations

Defendants ask the Court to strike the allegations regarding a 2013 settlement between Northern Leasing Systems Inc. and its affiliates—including Defendant Lease Finance—and the New York Attorney General referred to in the Amended Complaint as scandalous.  Defendants argue that "there are no facts to support the conclusion that the allegations relate in any way to consumer fraud in Illinois."  (R.53, at 19.)  Plaintiffs respond that the allegations regarding the New York settlement are relevant to punitive damages because the alleged wrongful conduct "is part of a policy and practice of unlawfully taking money from small businesses under the guise of collecting monies supposedly due under business equipment leases."  (R.63, at 16.)

Pursuant to Rule 12(f), the Court can strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.,* 554 F.3d 1133, 1141 (7th Cir. 2009).  A district court may strike an allegation as scandalous when it "bears no possible relation to the controversy," or when the allegations are "devoid of any factual basis."  *Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 664-65 (7th Cir. 1992); *see also Anderson v. Bd. of Educ. Of City of Chicago,* 169 F.Supp.2d 864, 867–68 (N.D. Ill. 2001) ("[p]rejudice results when the matter complained of has the effect of confusing the issues").  Motions to strike are appropriate if they serve to expedite litigation. *See Heller Fin., Inc. v. Midwhey Powder,* 883 F.2d 1286, 1294 (7th Cir. 1989). District courts have considerable discretion under Rule 12(f).  *See Delta,* 554 F.3d at 1141–42.

Plaintiffs characterize the presented New York practices as "not very different" from Defendants' practices in Illinois and Defendant argues that intertwining these allegations with those against Defendants Pushpin, Lease Finance, and Cohen has no purpose other than confusing the issues.  The Court agrees.  Plaintiffs allege the New York practices are "part of a

policy and practice of unlawfully taking money from small businesses under the guise of collecting monies supposedly due under business equipment leases." (R.63, at 16.) Yet, the allegations concerning the New York scheme share only one Defendant with the Illinois allegations of the present action—Lease Finance. This difference in parties prejudices and confuses the issues as they relate to Defendants Cohen and Pushpin in the present action. In addition, Plaintiffs do not allege any factual support for the allegations that the New York practices and the Illinois practices are a part of a "policy and practice" for Defendants Lease Finance, Pushpin and Cohen. Although Plaintiffs allege that Defendants' Illinois scheme is "not very different" from Northern Leasing Systems, Inc. and its affiliates scheme in New York, Plaintiffs provide only a cursory factual connection between them in that they both involve credit card processing equipment. Specifically, Plaintiffs plead that Northern Leasing Systems, Inc. and its affiliates entered into a settlement regarding the provision of credit card processing equipment and unauthorized withdrawals from bank accounts. (*Id.*, ¶¶ 6, 7.) On the other hand, Plaintiffs allege that Defendants Lease Finance, Pushpin, and Cohen engaged in a scheme also involving lease of credit card swiping machines, but further allege that Plaintiffs entered into Non-Cancellable Leases by forgery and that Defendants sent misleading collection letters and obtained *ex parte* default judgments in Illinois in violation of mandatory arbitration clauses. (*See e.g.,* R.45, ¶ 8.) Furthermore, Plaintiffs do not allege that Defendants Pushpin and Cohen were involved with Defendant Lease Finance at the time of the New York action. Plaintiffs' allegations, therefore, fail to provide a factual connection for a "policy and practice" by Defendants in the present action with only one party's involvement linking it to the New York action. As such, the Court grants Defendants' motion to strike the allegations regarding the New York scheme and strikes paragraphs 6 and 7 of Plaintiffs' Amended Complaint.

## VI.    Dismissal of Claims Against Cohen

Lastly, Defendants argue that the Court should dismiss all claims against Defendant Cohen because Plaintiffs have failed to allege any specific acts (or resulting damage) attributable to him.  Taking the facts in the light most favorable to Plaintiffs, Plaintiffs allege that Defendant Cohen is the only listed member of Defendant Lease Finance, an Illinois registered LLC.  (R.45, ¶ 13.)  Plaintiffs further allege that Defendant Cohen owns, operates and controls numerous shell entitles—including Pushpin and Lease Finance—which sell equipment leases, buy debts, and collect debts acquired through purchases of leases.  (*Id.*, ¶ 14.)  Plaintiffs further allege that Defendant Cohen is also the managing member of and controls the operations for GCN Holdings, LLC—a corporation that acquires debts and subsequently assigns them to Defendant Pushpin.  (*Id.*, ¶ 15.)  The Instrument of Assignment associated with the Blankenship Lease lists GCN Holdings, LLC as "Buyer" and the Assignment and Assumption Agreement, also associated with the Blankenship Lease, is signed by Defendant Cohen, as President of Pushpin Holdings, LLC as "Buyer" and Pushpin as "Seller"—putting Cohen on both sides of the alleged assignment.  (R.45-4, at 10-11.)  Based on these allegations, Plaintiffs have sufficiently alleged Defendant Cohen's involvement in various transactions related to Pushpin. Lease Finance, and GCN Holdings, LLC.  Thus, Defendants' motion to dismiss all claims against Defendant Cohen is denied.

## CONCLUSION

For the forgoing reasons, the Court grants in part and denies in part Defendants' Motion to Dismiss the First Amended Class Action Complaint or, In the Alternative, to Strike Scandalous and Class Allegations Therefrom.

**DATED: October 6, 2015**

ENTERED

_____

AMY J. ST. EVE
United States District Court Judge