**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **RONALD W. BLANKENSHIP,** )<br>**and GARY BRASSFIELD,** )<br>**on behalf of themselves and all others** )<br>**similarly situated,** )<br> )<br>**Plaintiffs,** )<br> )<br>**vs.** )<br> )<br>**PUSHPIN HOLDINGS, LLC, LEASE** )<br>**FINANCE GROUP LLC, and JAY** )<br>**COHEN,** )<br> )<br>**Defendants.** )<br>———————————————— ) | **Case No. 1:14-cv-06636 (ASE) (JTG)** |

### ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO SECOND AMENDED CLASS ACTION COMPLAINT

Defendants Pushpin Holdings, LLC ("Pushpin"), Lease Finance Group, LLC ("LFG"), and

Jay Cohen ("Cohen") (collectively, "Defendants"), by their attorneys, Moses & Singer LLP and

Levenfeld Pearlstein, LLC, submit the following Answer, Affirmative Defenses and

Counterclaims to the Second Amended Class Action Complaint, filed October 13, 2015 [Doc.

#70] (the "SAC"), as follows:

### Introduction

1.      This class action is brought by 71 year old Blankenship who operates a shoe

repair store in Bessemer, Alabama, and 68 year old Gary Brassfield who runs an auto lube shop

in Fort Smith Arkansas.  They were sued in small claims court in the Circuit Court of Cook

County, Illinois by Pushpin and Lease Finance on "Non Cancellable Leases" which Plaintiffs

never signed.  *Ex parte* judgments were entered against them.  Their signatures were forged on

the Leases. The Leases were for credit card swiping equipment. To make matters worse, the suits filed by Pushpin and Lease Finance were in violation of mandatory arbitration clauses in the Leases.

ANSWER: Defendants deny the allegations of paragraph 1 of the SAC except admit that Plaintiff Blankenship was sued by Pushpin and Plaintiff Brassfield was sued by LFG in the Circuit Court of Cook County, Illinois and the Leases were for credit card swiping equipment.

2. Further, money was taken out of Plaintiffs' bank accounts by Defendants without authorization based on the forged Leases. The Leases are not enforceable against Plaintiffs because their signatures were forged. A forged instrument or contract is not enforceable against the person whose signature is forged. Even if the signatures had been authentic, Defendants breached mandatory arbitration clauses in the Leases which apply to the claims made against Plaintiffs. In similar disregard of the mandatory arbitration clauses, Pushpin and Lease Finance have filed hundreds of small claims cases in Cook County, Illinois.

ANSWER: Defendants deny the allegations of paragraph 2 of the SAC.

3. Pushpin and Lease finance ignored the mandatory arbitration clauses here and filed suits against Blankenship and Brassfield. Pushpin got an *ex pate* judgment against Blankenship for $2,497.65 plus costs. Lease Finance obtained an *ex parte* judgment against Brassfield for $2,753.00.

ANSWER: Defendants deny the allegations of paragraph 3 of the SAC except admit that a judgment was entered against Plaintiff Blankenship and in favor of Pushpin in the amount of $2,497.65 plus costs and a judgment was entered against Plaintiff Brassfield and in favor of LFG in the amount of $2,753.00 plus costs.

4.      What happened to Plaintiffs has happened to hundreds of other people.  Lease Finance and Pushpin have filed hundreds of small claim collection cases in the Circuit Court of Cook County, Illinois.  For instance, in just the first two weeks of July 2014, they filed over 150 small claims cases.

ANSWER: Defendants deny the allegations of paragraph 4 of the SAC except admit that LFG and Pushpin have filed hundreds of small claim collection cases in the Circuit Court of Cook County, Illinois.

5.      Plaintiffs are informed and believe that many of the hundreds of cases filed by Pushpin and Lease Finance are based on forged signatures and initiated in violation of mandatory arbitration clauses.

ANSWER: Defendants deny the allegations of paragraph 5 of the SAC.

6.      Lease Finance and Pushpin are engaged in a scheme that includes, without limitation, taking money out of customer bank accounts on an unauthorized basis based on forged leases, sending out misleading collection demand letters, making faulty assignments that do not refer to individual leases, and then obtaining *ex parte* default judgments in violation of mandatory arbitration clauses if the customer takes action to stop the unauthorized withdrawals.

ANSWER: Defendants deny the allegations of paragraph 6 of the SAC.

**The Parties**

7.      Class Plaintiff Ronald Blankenship is an individual who operates a shoe repair business doing business as "Grand Shoe Repair" in Bessemer, Alabama.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 7 of the SAC and, for this reason and otherwise, deny the allegations.

8.     Class Plaintiff Gary Brassfield operates an oil lube shop in Greenwood, Arkansas.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 8 of the SAC and, for this reason and otherwise, deny the allegations.

9.     Pushpin is a Delaware limited liability company.  Its registered agent for service of process is CT Corporation System, 111 Eighth Avenue, New York, NY 10011.  Pushpin is a shell entity with no full time employees or any place of business.  It is not registered with the Illinois Secretary of State to conduct business in Illinois as a foreign company.  On information and belief, Pushpin has no business other than debt collection.

ANSWER: Defendants deny the allegations of paragraph 9 of the SAC except admit that Pushpin is a Delaware limited liability company.

10.     On information and belief, Pushpin pays about one cent on the dollar to purchase time barred debts on which it brings suit.  It then files hundreds of small claims cases against out of state defendants knowing that the cases will lead to *ex parte* judgments, even though the suits violate the mandatory arbitration clauses.  If Pushpin manages to collect ten cents on the dollar through wrongful collection demands on *ex parte* judgments, it make one thousand percent on its investment.

ANSWER: Defendants deny the allegations of paragraph 10 of the SAC.

11.     Lease Finance is an Illinois registered LLC whose only listed member is Jay Cohen.  Like Pushpin, Lease Finance files hundreds of bogus collection cases in Cook County, Illinois.

ANSWER: Defendants deny the allegations of paragraph 0 of the SAC except admit that LFG is registered in Illinois.

12.     Cohen is an individual is a citizen and resident of the State of New York.  He resides at 9 Sterling Place, Lawrence, New York 11559.  Cohen owns, controls and operates numerous alter ego shell entities which sell equipment leases, buy debts, and collect debts acquired through purchase of leases.  The alter ego entities include Pushpin and Lease Finance.  Assets are commingled amongst all the shell entities.  The main telephone number for these entities is 888-271-4480.  It greets callers with a recording "your leasing company" without naming a particular company.

ANSWER: Defendants deny the allegations of paragraph 12 of the SAC except admit that Cohen is a citizen and resident of the State of New York and resides at 9 Sterling Place, Lawrence, New York 11559.

13.     On information and belief, Cohen is also the managing member of GCN Holdings, LLC and controls its operations.  GCN Holdings allegedly acquires debts which it subsequently assigns to Pushpin.  Cohen signs documents as "President" of Pushpin, even though Pushpin is not a corporation and thus would have no President.  Since Cohen is the managing member of GCN Holdings and also holds himself out as the President of Pushpin, he is on both sides of the alleged assignment.  On information and belief, GCN Holdings, Lease Finance and Pushpin are all shell entities controlled by Cohen, by and between which, he assigns and transfer claims as he sees fit.

ANSWER: Defendants deny the allegations of paragraph 13 of the SAC.

### Facts

14.     Pushpin and Lease Finance have filed hundreds of small claims cases in Cook County, Illinois.  Attached hereto as **Exhibit 1** and **Exhibit 2** are lists of such cases filed by them in the First Municipal District.

ANSWER: Defendants admit the allegations of paragraph 14 of the SAC but Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 14 related to Exhibits 1 and 2.

### Robert Blankenship

15.     Class Plaintiff Ronald Blankenship is a 71 year old individual operating a shoe repair store in Bessemer, Alabama as a sole proprietor using the assumed name of Grand Shoe Repair.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph **Error! Reference source not found.** of the SAC and, for this reason and otherwise, deny the allegations.

16.     He has been in the shoe repair business for forty-five years.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph **Error! Reference source not found.** of the SAC and, for this reason and otherwise, deny the allegations.

17.     Back in 2002, Blankenship's shoe repair store was located at 102 West 3rd Street, Sheffield, Alabama.  On a day when Blankenship was not even at the store, a representative of Retriever Payment System marketed a credit card swiping machine to Blankenship's assistant and then left a machine at the store a few days later.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph **Error! Reference source not found.** of the SAC and, for this reason and otherwise, deny the allegations.

18.     Without Blankenship's knowledge or authorization, Retriever Payment Systems caused his signature to be forged on a Non-Cancellable Lease dated November 25, 2002 which

bears the name of Lease Finance Group on it. Blankenship never signed the Lease and did not even see it until Lease Finance started sending collection letters to him and making collection demands.

ANSWER: Defendants deny the allegations of paragraph 18 of the SAC.

19. On the signature line for Lessee is the name Ronald Blankenship and his forged signature. The signature line identifies him as the Lessee. The signature block has no reference to any corporation being the Lessee. Grand Shoe Repair is an assumed name under which he does business. Pushpin and Lease Finance claim that their collection cases are based on the Personal Guaranties so that the mandatory arbitration clauses in the Lease do not apply. This is incorrect because even if the forged signatures were authentic, the Leases are signed **individually** by Blankenship and Brassfield. The signature block for Blankenship says Blankenship is the Lessee and calls him the owner. "The Grand Shoe Repair" is an assumed name. It is not a corporation. *Thus, even if Defendants could show Blankenship signature was not forged,* **Blankenship is the Lessee according to the signature block** *and the mandatory arbitration clause applies to him both because of the signature block and the broad language of the arbitration clause which refers to claims or controversies with the Guarantor.*

ANSWER: Defendants deny the allegations of paragraph 19 of the SAC.

20. Blankenship's forged signature also appears in the Personal Guaranty section where he is purportedly guaranteeing a Non Cancellable Lease which already had his forged signature.

ANSWER: Defendants deny the allegations of paragraph 20 of the SAC.

21.     The Lease is not enforceable against Blankenship due to the forged signature.  If it was enforceable, any collection effort would have to be made through arbitration not a lawsuit. Paragraph 21 of the Lease contains the clause:

> CHOICE OF LAW; ARBITRATION: Any claim or controversy, including any contract or tort claim, between or among us, you or any Guarantor related to this Lease, **shall** be determined by binding arbitration in accordance with Title 9 of the U. S. Code and the Commercial Arbitration Rules of the American Arbitration Association. (Emphasis supplied).

ANSWER: Defendants deny the allegations of paragraph 21 of the SAC.

22.     Blankenship's Lease agreement was signed by Lease Finance Group, a Division of CIT Financial USA, Inc.  The "Rep Code" is Retriever Payment Systems.

ANSWER: Defendants admit the allegations of paragraph 22 of the SAC.

23.     On its website, Retriever Payment Systems, deceptively promises the "finest merchant services support team in the industry".  The opposite is true.  There have been numerous complaints about Retriever Payment's non-disclosure of fees, misrepresentation of terms, unprofessional conduct, and deceptive sales tactics.  Its website touts rates starting at 1.35% of the amount of payments being processed on credit cards, but it fails to mention that most lessees pay significantly more for their credit card machines.  The company had 268 Better Business Bureau complaints in the last 36 months.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph **Error! Reference source not found.** of the SAC and, for this reason and otherwise, deny the allegations.

24.     The website www.cardpaymentoptions.com explains the link between Retriever Payment Systems and Lease Finance:

> There are multiple complaints online that claim that Retriever Payment System signs merchants up for 48-month, non-cancellable leases through Lease Finance Group, a DBA of Northern Leasing Systems.  Aside from the poor contract terms, Northern Leasing is notorious for poor service, deceptive advertising, and costly equipment.

Lease Finance Group had **541 complaints** reported against it by the Better Business Bureau including **61 complaints** about advertising and sales, **211 complaints** on billing and collection issues, and **267 complaints** about product and service.  Pushpin Holdings had **142 Better Business Bureau complaints reported** against it.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 24 of the SAC and, for this reason and otherwise, deny the allegations.

25.     Blankenship's machine never worked properly.  He turned it in after seven or eight months.  Cards did not swipe correctly.  He is informed and believes that some transactions may not have been processed at all resulting in monetary damage to him.  He made numerous calls complaining that the machine not working.  His concerns were never addressed.  The machine was never fixed.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph **Error! Reference source not found.** of the SAC and, for this reason and otherwise, deny the allegations.

26.     $39.95 was automatically deducted from his bank account for a period of months although the machine was not working properly.  Blankenship was thereby damaged.

ANSWER: Defendants deny the allegations of paragraph 26 of the SAC except admit deducting $39.95 from the bank account provided by Lessee pursuant to the terms of the Lease.

27.    Further, money from his credit card customers were supposed to be directly deposited into his bank account by the Lessor within 48 hours, but that did not happen.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph **Error! Reference source not found.** of the SAC and, for this reason and otherwise, deny the allegations.

28.    Sometimes money would not be deposited into his account for several days.  He was thereby damaged in not having use of his money.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph **Error! Reference source not found.** of the SAC and, for this reason and otherwise, deny the allegations.

29.    To make matters worse, $500 was wrongfully taken out of his bank account by Lease Finance after he turned over his machine.  Blankenship is informed and believes that this charge was fraudulent.

ANSWER: Defendants deny the allegations of paragraph 29 of the SAC.

30.    Pushpin violated the mandatory arbitration clause by filing suit against Blankenship on October 8, 2013 (Case No. 13-M1-155481).  Pushpin obtained an *ex parte* judgment against Blankenship on January 6, 2014 for $2,497.65 plus costs after suing him in violation of the mandatory arbitration clause.  A copy of the case pleadings and Blankenship's lease documents are attached as **Exhibit 3**.

ANSWER: Defendants deny the allegations of paragraph 30 of the SAC except admit that a judgment was entered against Plaintiff Blankenship and in favor of Pushpin in the amount of $2,497.65 plus costs.

31.     The *ex parte* judgment against Blankenship was obtained based upon incomplete and inadequate documentation.  The Instrument of Assignment dated November 30, 2005 attached to the Complaint is from CIT Financial USA, Inc. to GCN Holding LLC, but it fails to refer to the Blankenship lease.  There is no way to determine from the Assignment that it includes the Blankenship lease.  Further, the Assignment and Assumption Agreement dated March 1, 2010 by and among GCN Holding LLC, CCN Holding (Canada) ULC which supposedly assigns the lease to Pushpin fails to explain how CCN Holding had any rights to the Blankenship lease.  The Assignment and Assumption Agreement does not even mention the Blankenship lease.  In short, the documentation of the alleged assignment to Pushpin is woefully inadequate.  On information and belief, the same documentation problems exist for all class members.

ANSWER: Defendants deny the allegations contained in paragraph **Error! Reference source not found.** of the SAC and otherwise respectfully refer to the Court the construction, interpretation, application, and legal effect of the documents referred to therein.

32.     Blankenship has been damaged for all the aforesaid reasons as well as the entry of an *ex parte* judgment against him which will adversely affect his consumer credit report.

ANSWER: Defendants deny the allegations of paragraph 32 of the SAC.

## Gary Brassfield

33.     Gary Brassfield operates an auto lube shop in Arkansas.  Timothy George, the sale person, left a credit card swiping machine at Blankenship's business, but said nothing about Blankenship signing any Lease.  Timothy George was subsequently sent to jail on fraud charges relating to other dealings.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph **Error! Reference source not found.** of the SAC and, for this reason and otherwise, deny the allegations.

34.     As was the case with Class Plaintiff Blankenship, Brassfield's signature was forged on the Non-Cancellable Lease and the accompanying Guarantee.  He was never asked to sign any Lease, nor was he told that he was entering into a Lease.  Once again, in the signature block, the Lessee is identified as an individual, Gary Brassfield, and he is called the Owner. There is no corporation referenced in the signature block.  It was only when Lease Finance started making collection demands did Brassfield learn that his signature had been forged on a Lease.  If Defendants were to show no forgery, the mandatory arbitration clause applies due to the signature block identifying Brassfield as the Lessee and the broad language of the arbitration clause

ANSWER: Defendants deny the allegations of paragraph 34 of the SAC.

35.     The Lease was signed by Retriever Payment Systems and then purportedly sold to Lease Finance, although once again, the assignment documentation attached to the Complaint is incomplete.

ANSWER: Defendants deny the allegations of paragraph 35 of the SAC except admit that the Lease was signed by Retriever Payment Systems and then sold to LFG all rights, title and interest in the Lease and Guaranty.

36.     Brassfield's credit card machine broke down.  His efforts to have Lease Finance fix the machine were to no avail.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 36 of the SAC regarding whether the credit card machine broke down and, for this reason and otherwise, deny the allegations.

37.     Brassfield tendered the machine back to Lease Finance, but it never bothered to pick it up.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph **Error! Reference source not found.** of the SAC and, for this reason and otherwise, deny the allegations.

38.     Paragraph 21 of the Lease Agreement states:

> CHOICE OF LAW; ARBITRATION: Any claim or controversy, including any contract or tort claim, between or among us, you or any Guarantor related to this Lease, **shall** be determined by binding arbitration in accordance with Title 9 of the U. S. Code and the Commercial Arbitration Rules of the American Arbitration Association. (Emphasis supplied).

ANSWER: In reference to the allegations contained in paragraph **Error! Reference source not found.** of the SAC, Defendants respectfully refer to the Court the construction, interpretation, application, and legal effect of the documents referred to therein and otherwise deny the allegations and note that the Personal Guaranty section of the Lease (page 2) provides for jurisdiction in Cook County either in Illinois state court or federal district court.

39.     The Lease is not enforceable against Brassfield because Brassfield's signature is forged.  Further, Lease Finance violated the mandatory arbitration clause by filing suit against Brassfield on September 25, 2013 (Case No. 12-M1-152732).  On January 28, 2014, Lease Finance obtained an *ex parte* judgment against Brassfield for $2,753.00 plus costs after suing him in violation of the mandatory arbitration clause.  A copy of the case pleadings, demand letter sand his lease documents are attached as **Exhibit 4**.

ANSWER: Defendants deny the allegations of paragraph 39 of the SAC except admits that a judgment was entered against Plaintiff Brassfield and in favor of LFG in the amount of $2,753.00 plus costs.

40.    The *ex parte* judgment was obtained based upon incomplete and inadequate documentation.  The Bill of Sale dated April 1, 2010 attached to the Complaint is from Retriever Payment Systems to Lease Finance, but it fails to refer to the Brassfield lease.

ANSWER: Defendants deny the allegations of paragraph 40 of the SAC.

41.    Lease Finance also sent Brassfield various deceptive and misleading collection notices in its attempt to collect on the alleged debt.  On March 19, 2014, Lease Finance mailed a "Pre-Judgment Notice" to Brassfield in which it threatened to obtain a judgment against him for $4,476.93.  It demands payment of $4,476.93 within ten days.  The Notice was deceptive and misleading because Lease Finance had already obtained an *ex parte* judgment against him on January 28, 2014 for $2,753.00.  The "Pre-Judgment Notice" wrongfully demands almost $2,000 in excess of the actual judgment and threatens liens on Brassfield's real and personal property, bank accounts, and wage garnishment proceedings.

ANSWER: Defendants deny the allegations of paragraph 421 of the SAC.

42.    Brassfield has been damaged by having payments taken from his bank account for a defective machine and by having an *ex parte* judgment entered against him which will adversely affect his consumer credit report.

ANSWER: Defendants deny the allegations of paragraph 42 of the SAC.

**Common Allegations**

43.     The Class Action Defendants regularly seek to enforce Non-Cancellable Leases against customers whose signatures have been forged on the Leases.  The persons that are the victims of these practices are typically sole proprietors or persons operating small businesses.

ANSWER: Defendants deny the allegations of paragraph 43 of the SAC.

44.     These Leases have mandatory arbitration agreements which are routinely violated by Defendants.  The Lessee signature lines typically identify the Lessee as an individual so that if there was no forgery, the mandatory arbitration clauses apply.  Further, the fact that the Personal Guarantees do not have arbitration clauses is irrelevant.  The language of the arbitration clauses includes actions relating to the Guarantees.  The Lessees as individuals would have the benefit of the arbitration clauses, if the signatures were not forged.

ANSWER: Defendants deny the allegations of paragraph 44 of the SAC.

45.     The amounts in controversy are usually less than $5,000.  Due to the relatively small amounts involved, it is not economical for the out of state defendants to hire lawyers to contest the small claims suits.  Since the defendants are located throughout the country, it is also cost prohibitive for them to travel to Chicago to file pro-se court appearances in these small claims cases.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph **Error! Reference source not found.** of the SAC and, for this reason and otherwise, deny the allegations, except admit that the amounts in controversy can be less than $5,000.

46.     Further, the Class Action Defendants often serve persons at addresses which are no longer valid.

ANSWER: Defendants deny the allegations of paragraph 46 of the SAC.

47. The documents relied upon by the Class Action Defendants are often invalid on their face, even apart from the forged signatures.

ANSWER: Defendants deny the allegations of paragraph 47 of the SAC.

48. The Class Defendants willfully and intentionally file dozens, if no hundreds, of suits in violation of mandatory arbitration clauses and on forged documents.

ANSWER: Defendants deny the allegations of paragraph **Error! Reference source not found.** of the SAC.

49. The actions of the Class Action Defendants are wrongful.

ANSWER: Defendants deny the allegations of paragraph 49 of the SAC.

50. The Class Action Plaintiffs have been damaged due to the wrongful acts.

ANSWER: Defendants deny the allegations of paragraph **Error! Reference source not found.** of the SAC.

### Class Allegations

51. The two classes that Class Action Plaintiffs seek to represent consist of (a) all persons who were sued in small claims court in the last ten years in the Circuit Court of Cook County, Illinois by the Class Action Defendants in violation of the mandatory arbitration clauses who sustained damages such as *ex parte* judgments, and (b) all persons who were sued in small claims court in the last three years on Leases where their signature was forged in violation of the Illinois Consumer Fraud Act who sustained damages such as *ex parte* judgments.

ANSWER: The allegations contained in paragraph 51 of the SAC consist of legal argument and conclusions, to which no responsive pleading is required, but to the extent a responsive pleading is required Defendants deny the allegations of paragraph 51 of the SAC.

52. The class is so numerous that joinder of all class members is impracticable.

ANSWER: The allegations contained in paragraph 51 of the SAC consist of legal argument and conclusions, to which no responsive pleading is required, but to the extent a responsive pleading is required Defendants deny the allegations of paragraph 51 of the SAC.

53. The Class Action Plaintiffs and the class share common question of fact and law, including:

a. Whether the conduct of the Class Action Defendants was a violation of the Illinois Consumer Fraud and Deceptive Practices Act; and,

b. Whether the Class Action Defendants regularly file suit in violation of mandatory arbitration clauses.

ANSWER: The allegations contained in paragraph **Error! Reference source not found.** of the SAC consist of legal argument and conclusions, to which no responsive pleading is required, but to the extent a responsive pleading is required Defendants deny the allegations of paragraph **Error! Reference source not found.** of the SAC.

54. The Class Action Plaintiffs will fairly and adequately represent and protect the interests of the class and have engaged counsel experienced in consumer protection and class action litigation to vigorously represent the class.

ANSWER: The allegations contained in paragraph **Error! Reference source not found.** of the SAC consist of legal argument and conclusions, to which no responsive pleading is required, but to the extent a responsive pleading is required Defendants deny the allegations of paragraph **Error! Reference source not found.** of the SAC.

55. A class action is superior to other methods for the fair and efficient adjudication of this controversy.

ANSWER: The allegations contained in paragraph **Error! Reference source not found.** of the SAC consist of legal argument and conclusions, to which no responsive pleading is required, but to the extent a responsive pleading is required Defendants deny the allegations of paragraph **Error! Reference source not found.** of the SAC.

## COUNT ONE –

## VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICE ACT

56.     Plaintiffs repeat and reallege the foregoing paragraphs.

ANSWER: In response to paragraph 56 of the SAC, Defendants repeat and re-allege their responses to paragraphs 1-55 of the FAC.

57.     The Illinois Consumer Fraud and Deceptive Practices Act 815 ILCS 505/1 et seq. prohibits:

> …unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact…in the conduct of trade or commerce…whether any person has in fact been misled, deceived or damaged thereby.

ANSWER: In reference to the allegations contained in paragraph **Error! Reference source not found.**7 of the SAC, Defendants respectfully refer to the Court the construction, interpretation, application, and legal effect of the statute referred to therein and otherwise deny the allegations of paragraph **Error! Reference source not found.**7 of the SAC.

58.     Section 505/10a of the Act provides for actions for damages:

> Any person who suffers actual damages as a result of a violation of this Act, committed by any other person may bring an action against such person.

ANSWER: In reference to the allegations contained in paragraph **Error! Reference source not found.**8 of the SAC, Defendants respectfully refer to the Court the construction,

interpretation, application, and legal effect of the statute referred to therein and otherwise deny the allegations of paragraph **Error! Reference source not found.**8 of the SAC.

59. As described above, the Class Action Defendants violated the Consumer Fraud Act by filing suits against persons whose signatures were forged on Non Cancellable Leases. This practice is unfair and deceptive. It was committed in the conduct of trade or commerce.

ANSWER: Defendants deny the allegations of paragraph 59 of the SAC.

60. Judge Kocoros ruled in *Johnson v. Pushpin Holdings et al.*, (2013 –cv- 7468) that non resident persons such as Plaintiffs have standing to pursue these claims. The Act does not limit the person seeking damages to consumers.

ANSWER: In reference to the allegations contained in paragraph **Error! Reference source not found.** of the SAC, Defendants respectfully refer to the Court the construction, interpretation, application, and legal effect of the decision referred to therein and otherwise deny the allegations of paragraph **Error! Reference source not found.** of the SAC.

61. In the alternative, the Class Action Plaintiffs are consumers as defined and interpreted under the Illinois Consumer Fraud Act. Consumers have been held to include small businesses and individuals doing business as sole proprietors. Plaintiffs here purchased or contracted to purchase merchandise as the term is interpreted under and defined under the Act. Merchandise includes services. In addition, actions for deceptive leasing practices are covered under the Act.

ANSWER: Defendants deny the allegations of paragraph 61 of the SAC.

62. Trade or commerce has been affected. Debt collection practices are governed by the Act.

ANSWER: Defendants deny the allegations of paragraph 62 of the SAC.

63.     As pled above, the Class Action Plaintiffs have sustained damages as the result of Defendants' actions.

ANSWER: Defendants deny the allegations of paragraph 63 of the SAC.

64.     The actions of Class Action Defendants were undertaken willfully, wantonly and maliciously.

ANSWER: Defendants deny the allegations of paragraph 64 of the SAC.

## AFFIRMATIVE DEFENSES

Defendants specifically reserve all rights to assert any other affirmative defenses that are now available or may become available or appear during, or as a result of, discovery in this action or further investigation in this action:

### First Affirmative Defense
### (Failure to State a Claim)

1.     Plaintiffs' claims and those of potential class members they seek to represent are barred, in whole or in part, because the complaint fails to state a claim.

### Second Affirmative Defense
### (*ICFA Inapplicable*)

2.     Plaintiffs' claims and those of potential class members they seeks to represent are barred due to the jurisdictional requirements of the ICFA.  Specifically, the ICFA does not apply to non-Illinois residents unless the circumstances of the disputed transaction occurred "primarily and substantially" in Illinois.

3.     Therefore, Plaintiffs' claims and those of potential class members they seek to represent are barred and, thus, judgment should be entered in favor of defendants.

### Third Affirmative Defense
### (Statute of Limitations)

4.     Plaintiffs' claims and those of potential class members they seek to represent are barred, in whole or in part, by the applicable three-year statutes of limitations applicable to claims under the Illinois Consumer Fraud Act.

### Fourth Affirmative Defense
### (Statute of Limitations)

5.     Plaintiffs' claims and those of potential class members they seek to represent are barred, in whole or in part, by the applicable one-year contractual statutes of limitations in the lease agreements executed by the parties.

### Fifth Affirmative Defense
### (*No Damages*)

6.     Plaintiffs' claims and those of potential class members they seek to represent are barred, in whole or in part, because Plaintiffs have not pled and cannot prove damages under the Illinois Consumer Fraud Act.

### Sixth Affirmative Defense
### (*Res Judicata*)

7.     Plaintiffs' claims and those of potential class members they seek to represent are barred, in whole or in part, by the *res judicata* doctrine.  Plaintiffs' claims and those potential class members they seek to represent challenge judgments entered by the Circuit Court of Cook County, Illinois.

8.     With respect to Blankenship, on January 6, 2014, Pushpin obtained a judgment in the Circuit Court of Cook County, Illinois, arising from his breach of a guaranty agreement (the Blankenship State Court Lawsuit").  The Blankenship State Court Lawsuit resulted in a final judgment in Pushpin's favor and against Blankenship due to his breach of the guaranty.  Blankenship did not interpose a counterclaim in the Blankenship State Court Lawsuit.  This Lawsuit arises from the same operative facts as the Blankenship State Court Lawsuit.  Moreover,

a decision in Blankenship's favor here would impair and/or nullify the earlier judgment in the Blankenship State Court lawsuit.

9. With respect to Brassfield, on January 28, 2014, LFG obtained a judgment in the Circuit Court of Cook County, Illinois, arising from his breach of a guaranty agreement (the Brassfield State Court Lawsuit"). The Brassfield State Court Lawsuit resulted in a final judgment in Pushpin's favor and against Brassfield due to his breach of the guaranty. Blankenship did not interpose a counterclaim in the Brassfield State Court Lawsuit. This Lawsuit arises from the same operative facts as the Brassfield State Court Lawsuit. Moreover, a decision in Brassfield's favor here would impair and/or nullify the earlier judgment in the Brassfield State Court lawsuit.

10. The *res judicata* doctrine is intended to bar claims based on facts that would have constituted a counterclaim or defense in the earlier proceeding where successful prosecution of the later action would either nullify the earlier judgment or impair the rights established in the earlier action.

11. Plaintiffs' claims and those of potential class members they seek to represent are barred, in whole or in part, by the *res judicata* doctrine and, thus, judgment should be entered in favor of defendants.

### Seventh Affirmative Defense
### (*Collateral Estoppel*)

12. Plaintiffs' claims and those of potential class members they seek to represent are barred, in whole or in part, by collateral estoppel. Plaintiffs' claims and those potential class members they seek to represent challenge judgments entered by the Circuit Court of Cook County, Illinois.

13.     With respect to Blankenship, on January 6, 2014, Pushpin obtained a judgment in the Blankenship State Court Lawsuit.  The Blankenship State Court Lawsuit resulted in a final judgment in Pushpin's favor and against Blankenship due to his breach of the guaranty.  Blankenship did not interpose a counterclaim in the Blankenship State Court Lawsuit.  This Lawsuit arises from the same operative facts as the Blankenship State Court Lawsuit.  Further, in the Blankenship State Court Lawsuit ruled that the Blankenship Guaranty was enforceable, Blankenship breached the Blankenship Guaranty, and that Blankenship owed Pushpin damages in the amount of $2,497.65.  Moreover, a decision in Blankenship's favor here would impair and/or nullify resolution of this issues.

14.     With respect to Brassfield, on January 28, 2014, LFG obtained a judgment in the Brassfield State Court Lawsuit.  The Brassfield State Court Lawsuit resulted in a final judgment in Pushpin's favor and against Brassfield due to his breach of the guaranty.  Blankenship did not interpose a counterclaim in the Brassfield State Court Lawsuit.  This Lawsuit arises from the same operative facts as the Brassfield State Court Lawsuit.  Further, in the Blankenship State Court Lawsuit rules that the Brassfield Guaranty was enforceable, Brassfield breached the Brassfield Guaranty, and that Brassfield owed LFG damages in the amount of $2,753.00.  Moreover, a decision in Brassfield's favor here would impair and/or nullify resolution of this issues.

15.     Plaintiffs' claims and those of potential class members they seek to represent are barred, in whole or in part, by collateral estoppel and, thus, judgment should be entered in favor of defendants.

### Eighth Affirmative Defense
#### (*No Trade or Commerce and No Consumers*)

16.     Plaintiffs' claims and those of potential collective and class members they seeks to represent are barred because their claims do not involve "trade" or "commerce" nor are the Plaintiffs "consumers."     Under the ICFA, the terms "trade" or "commerce" mean "the advertising, offering for sale, sale, or distribution of any services and any property…or thing of value wherever situated, and shall include any trade or commerce…affecting the people of [Illinois]." 815 ILCS 505/1(f).  Defendants do not advertise or sells any product or service.

17.     Therefore, Plaintiffs' claims and those of potential class members they seek to represent are barred and, thus, judgment should be entered in favor of defendants.

### Ninth Affirmative Defense
### (*Waiver*)

18.     Plaintiffs' claims and those of potential class members they seek to represent based upon the alleged failure to arbitrate are barred, in whole or in part, by waiver.

19.     Neither Plaintiff has made an application to any Court (under the Illinois Arbitration Act and/or Federal Arbitration Act) with respect to a request to arbitrate.  Instead, Plaintiffs have filed lawsuit.

20.     Therefore, Plaintiffs' claims and those of potential class members they seek to represent are barred, in whole or in part, by waiver and, thus, judgment should be entered in favor of defendants.

### Tenth Affirmative Defense
### (*Forum Selection*)

21.     Plaintiffs' claims and those of potential class members they seek to represent based upon the alleged failure to arbitrate are barred, in whole or in part, by an applicable forum selection agreement.

22.     The Blankenship Guaranty Agreement provides that he agreed to litigate in the courts of Cook County – "*[t]he undersigned agrees and consents to the Court of the State of Illinois having jurisdiction in Cook County or any Federal District Court having jurisdiction in said county shall have jurisdiction and shall be the proper venue for determination of all controversies and disputes arising hereunder…* (emphasis added). Further, Blankenship did not agree to the terms of the underlying contract nor bind himself to arbitrate.

23.     The Brassfield Guaranty Agreement provides that he agreed to litigate in the courts of Cook County – "*[t]he undersigned agrees and consents to the Court of the State of Illinois having jurisdiction in Cook County or any Federal District Court having jurisdiction in said county shall have jurisdiction and shall be the proper venue for determination of all controversies and disputes arising hereunder…* (emphasis added). Further, Brassfield did not agree to the terms of the underlying contract nor bind himself to arbitrate.

24.     Therefore, Plaintiffs' claims and those of potential class members they seek to represent are barred, in whole or in part, by an applicable forum selection agreement and, thus, judgment should be entered in favor of defendants.

### Eleventh Affirmative Defense
### (*Collateral Attack Doctrine*)

25.     Plaintiffs' claims and those of potential class members they seek to represent based upon the alleged failure to arbitrate are barred, in whole or in part, by the collateral attack doctrine.

26.     A collateral attack on a judgment is an attempt to impeach that judgment in an action other than that in which it was rendered. Under the collateral attack doctrine, a final judgment rendered by a court of competent jurisdiction may only be challenged through direct appeal or procedure allowed by statute and remains binding on the parties until it is reversed

through such a proceeding. A foreign judgment is not subject to collateral attack except on the grounds of fraud in the procurement of the judgment or lack of jurisdiction in the rendering court. Further, only fraud which prevents a court from acquiring jurisdiction, as distinguished from fraud which occurred after the court obtained jurisdiction, renders the foreign judgment void.

27. The instant lawsuit is an improper collateral attack on Illinois judgments intended to impeach said judgments. It is not an attack through direct appeal or through a permissible Illinois procedure. Furthermore, each of the Plaintiffs was properly served and joined in their respective lawsuits, and the Illinois state court appropriately acquired jurisdiction over each of the Illinois state court lawsuits. And Neither Plaintiff has alleged, could allege or can prove that the Circuit Court of Cook County acquired jurisdiction through fraudulent means. Rather, each Plaintiff alleges fraud occurring after jurisdiction had been obtained and claims that the fraud resulted in the respective judgments.

28. Therefore, Plaintiffs' claims and those of potential class members they seek to represent are barred, in whole or in part, by the collateral attack doctrine and, thus, judgment should be entered in favor of defendants.

### Twelfth Affirmative Defense
### (Improper Claim Splitting)

29. Plaintiffs' claims are barred by the doctrine of improper claim-splitting.

30. Plaintiffs' claims are barred by their failure to assert them as defenses or counter-claims to any small claim action.

## FIRST COUNTERCLAIM
## ON BEHALF OF PUSHPIN HOLDINGS, LLC
### (Breach Of Guarantee Against Ronald W. Blankenship)

1.      On or about January 25, 2002, Ronald W. Blankenship ("Blankenship"), executed a personal guaranty agreement ("Guaranty") on behalf of The Grand Shoe Repair (the "Lessee") and in favor of CIT Financial USA, Inc. and its successors and assigns (the "Lessor") in connection with the Lessee and Lessor's Non Cancelable Lease agreement (the "Lease").

2.      On or about March 1, 2010, Pushpin Holdings, LLC ("Pushpin") purchased and acquired from the Lessor, all rights, title and interest in certain executed equipment finance agreements and guaranties, including the Lease and Guaranty referenced above.

3.      The Lease provides that in the event of a default, Lessor may require immediate payment of all amounts then due plus the unpaid balance of the remaining monthly lease payments for the original term of the Lease.

4.      Pursuant to Blankenship's Guaranty, he unconditionally guaranteed all of the Lessee's obligations to Lessor under the Lease, including the basic monthly lease payment by the Lessee to Lessor of $39.95 for a period of 48 months, plus Lessor's attorney's fees and legal costs incurred in enforcing the agreement.

5.      The Lessee defaulted by failing to make the required monthly lease payments under the Lease.  The Lessee made its last payment under the Lease on November 2, 2003 for a total amount paid of $479.40.

6.      As a result of the Lessee's failure to make the payment due on November 2, 2003 and each and every monthly lease payment due thereafter, there has been a default under the Lease.

7.     Thus, there is presently due and owing from the Lessee to Pushpin the remaining unpaid lease balance of $1,438.20 with interest thereon from November 2, 2003, plus Pushpin's attorney's fees and legal costs in the defense of this action and the prosecution of this counterclaim.

8.     On October 8, 2013, Pushpin commenced suit against Blankenship in the Circuit Court of Cook County, Illinois, seeking to enforce his Guaranty, including his unconditional guaranty to pay Pushpin's attorney's fees and legal costs incurred in enforcing the Guaranty and Lease.

9.     On January 6, 2014, a judgment was entered by the Circuit Court of Cook County, Illinois, on default, in favor of Pushpin and against Blankenship in the amount of $2,497.65, which judgment has not been satisfied, in whole or in part.

10.     In addition to the unsatisfied judgment, Blankenship is contractually obligated to pay Pushpin its attorney's fees and legal costs in the defense of this action and the prosecution of this counterclaim.

**SECOND COUNTERCLAIM**
**ON BEHALF OF LEASE FINANCE GROUP, LLC**
(Breach Of Guarantee Against Gary Brassfield)

11.     On or about March 15, 2010, Gary Brassfield ("Brassfield"), executed a personal guaranty agreement ("Guaranty") on behalf of Gary & Andre Oil Master (the "Lessee") and in favor of RPSI, Inc. d/b/a Retriever Payment Systems and its successors and assigns (the "Lessor") in connection with the Lessee and Lessor's Non Cancelable Lease agreement (the "Lease").

12.     On or about April 1, 2010, Lease Finance Group, LLC ("LFG") purchased and acquired from the Lessor, all rights, title and interest in certain executed equipment finance agreements and guaranties, including the Lease and Guaranty referenced above.

13.     The Lease provides that in the event of a default, Lessor may require immediate payment of all amounts then due plus the unpaid balance of the remaining monthly lease payments for the original term of the Lease.

14.     Pursuant to Brassfield's Guaranty, he unconditionally guaranteed all of the Lessee's obligations to Lessor under the Lease, including the basic monthly lease payment by the Lessee to Lessor of $89.00 for a period of 48 months, plus Lessor's attorney's fees and legal costs incurred in enforcing the agreement.

15.     The Lessee defaulted by failing to make the required monthly lease payments under the Lease.  The Lessee made its last payment under the Lease on November 18, 2012 for a total amount paid of $1,869.00.

16.     As a result of the Lessee's failure to make the payment due on November 18, 2012 and each and every monthly lease payment due thereafter, there has been a default under the Lease.

17.     Thus, there is presently due and owing from the Lessee to LFG the remaining unpaid lease balance of $1,869.00 with interest thereon from November 18, 2012, plus LFG's attorney's fees and legal costs in the defense of this action and the prosecution of this counterclaim.

18.     On October 8, 2013, LFG commenced suit against Brassfield in the Circuit Court of Cook County, Illinois, seeking to enforce his Guaranty, including his unconditional guaranty to pay LFG's attorney's fees and legal costs incurred in enforcing the Guaranty and Lease.

19.     On January 28, 2014, a judgment was entered by the Circuit Court of Cook County, Illinois, on default, in favor of LFG and against Brassfield in the amount of $2,753.00, which judgment has not been satisfied, in whole or in part.

20.     In addition to the unsatisfied judgment, Brassfield is contractually obligated to pay LFG its attorney's fees and legal costs in the defense of this action and the prosecution of this counterclaim.

**WHEREFORE**, Defendants demand judgment as follows:

A.      dismissing each cause of action asserted in the SAC against each Defendant, with prejudice;

B.      on the first counterclaim, a money judgment against Plaintiff Ronald Blankenship and in favor of Pushpin for such damages as are proved at trial, together with appropriate interest thereon in an amount to be determined at trial;

C.      on the second counterclaim, a money judgment against Plaintiff Gary Brassfield and in favor of LFG for such damages as are proved at trial, together with appropriate interest thereon in an amount to be determined at trial;

D.      awarding Defendants their expenses, costs, disbursements and attorney's fees; and

E.      for such other and further relief as the Court deems just.

Dated:    New York, New York
          February 2, 2016

                                        Respectfully submitted,


                                        By:   /s/ Scott E. Silberfein

                                        Jason Hirsh
                                        Levenfeld Pearlstein, LLC
                                        2 N. LaSalle St., Suite 1300
                                        Chicago, Illinois 60602

                                        Scott E. Silberfein (admitted *pro hac vice*)
                                        John V. Baranello (admitted *pro hac vice*)
                                        Moses & Singer LLP
                                        405 Lexington Avenue
                                        New York, New York  10174-1299
                                        *Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I, Scott E. Silberfein, an attorney, hereby certify that on February 2, 2016, I electronically filed

**DEFENDANTS' ANSWER TO THE SECOND AMENDED COMPLAINT** with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the

attorneys of record.

Howard B. Prossnitz, Esq.
Law Offices of Howard B. Prossnitz
218 North Jefferson, Suite 300
Chicago, Illinois 60661

/s/ Scott E. Silberfein___<br>SCOTT E. SILBERFEIN